[Crim. No. 7406.   In Bank.   Apr. 22, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM R. LILLIOCK et al., Defendants and Appellants.

William B. Wolfson and Harold J. Ackerman, under appointment by the Supreme Court, for Defendants and Appellants.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

PEEK, J.—By its verdict a jury found William R. Lilliock and Oliver Stanley Williams guilty of murder in the first degree. The same jury determined that Williams should suffer the death penalty and Lilliock be sentenced to life imprisonment. Thus Williams' appeal is automatic. (Pen. Code, § 1239, subd. (b).) Lilliock's appeal was transferred to this court and consolidated with that of Williams.

Since we hold that both appeals come within the rules set forth by the United States Supreme Court in *Massiah* v.

*United States,* 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246], and *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], as followed by this court in *People* v. *Dorado, ante,* p. 338 [42 Cal.Rptr. 169, 398 P.2d 361], and since the pertinent facts as regards this issue are not in conflict it becomes unnecessary to discuss in detail the factual background of the present case.

It is sufficient to note that on October 28, 1962, Arthur Kretchman, the victim, resided in a cottage at a motel near downtown Los Angeles. At approximately 10 o'clock that evening the occupant of the cottage next door heard a thud, then a moaning sound from the cottage. When the witness stepped outside to investigate he observed a man whom he identified as Lilliock standing on the porch of the victim's cottage. Lilliock stated to him that Kretchman was intoxicated; that "they" had some trouble trying to get him into bed, and would stay with him that evening. The witness further testified that when the victim's car was driven away it was Lilliock who was driving but that he could not identify the person riding beside Lilliock. Immediately after the body was discovered fingerprints of both defendants were found in the cottage. According to the autopsy surgeon the cause of death was "asphyxia due to strangulation of the neck."

When defendants were arrested by a highway patrolman near Needles at approximately 3 o'clock the following morning, Lilliock was driving the victim's automobile and Williams was sitting beside him.

From the foregoing facts it is manifest that when Los Angeles police officers were sent to Needles to interrogate the defendants concerning the homicide the investigation had *focused* upon them. The police then engaged in a process of interrogations that lent itself to eliciting incriminating statements. At that time the investigation had reached the accusatory stage within the meaning of *Escobedo* and *Dorado,* which require that at that stage defendants must be informed of their rights to counsel and to remain silent or that they knowingly and intelligently waive those rights.

The officers first questioned each defendant separately at the sheriff's office in Needles. They began with Lilliock, about 11:30 on the morning of his arrest, and by 12:30 or 1 p.m. he had admitted that he was near the cabin and stole the automobile. When asked about a murder, Lilliock responded: "Well, the man was alive when I left." Williams was then questioned, but he would merely state that he found the

automobile parked on a street with the keys in it. Thereafter defendants were taken from Needles to Los Angeles.

The next day Lilliock made a further statement, this time in Williams' presence. He admitted that he and Williams broke into the cabin, cooked and ate some food, and attacked Kretchman when he returned unexpectedly. Lilliock stated that they went through his pockets and took the car keys. Williams again refused to answer any questions.

Both defendants were again interrogated the following day. On this occasion Williams admitted that he "grabbed hold" of Kretchman and brought him to the floor, and Lilliock admitted that he attempted to tie the victim. Williams also admitted that he obtained 60 cents from Kretchman's pockets, and that he remained inside the cabin while Lilliock tried the keys in the car. It thus appears that defendants admitted acts constituting burglary and robbery, and Kretchman was killed in the perpetration of these felonies. Their statements were introduced by the People at the trial.

As the present cause was tried prior to the decisions in *Massiah* v. *United States, supra,* 377 U.S. 201, and *Escobedo* v. *Illinois, supra,* 378 U. S. 478, the parties could not have been aware of the critical importance of establishing that defendants were fully apprised of their rights prior to interrogation. Because of this circumstance we offered all parties an opportunity to respond to this point. The People replied in part: ". . . there is nothing in the record of the present case to show that appellants were not advised of their constitutional rights." But it is equally true that there is nothing in the record to show that defendants knew or were advised of their rights. Certainly it would seem that if advice as to their constitutional rights had been given to the defendants the People could have been more specific and would have produced affirmative proof to that effect. It is reasonable to conclude that the People, by declining to affirmatively pursue the matter, in effect concede that the defendants were not told of their rights by the police and did not knowingly waive them. (See *People* v. *Burke,* 61 Cal.2d 575, 578 [39 Cal.Rptr. 531, 394 P.2d 67].)

Since proof that a suspect, once the investigation has reached the accusatory stage, as here, had been informed of his constitutional rights to counsel and to remain silent at that stage or that he knowingly and intelligently waived these rights is a requirement for admission of an extra-judicial confession (*People* v. *Dorado, supra, ante,* p. 338), it must fol-

low that the burden of showing that such advice had been given by the authorities or that the defendant otherwise waived these rights should fall upon the prosecution. (Cf. *People* v. *Underwood,* 61 Cal.2d 113, 121 [37 Cal.Rptr. 313, 389 P.2d 937]; *In re Johnson, ante,* pp. 325, 334-335 [42 Cal.Rptr. 228, 398 P.2d 420].)

There can be no assertion herein that defendants waived their rights to remain silent and to legal counsel, since failure of the officers to inform them of their rights and the total lack of any other evidence in this regard precludes any finding of waiver of those rights. (See *Killpatrick* v. *Superior Court,* 153 Cal.App.2d 146, 150 [314 P.2d 164]; see also *In re Johnson, supra, ante,* pp. 325, 333-335.) But even if the question of waiver could be reached, we would be squarely faced with the rule of *Carnley* v. *Cochran,* 369 U.S. 506, 516 [82 S.Ct. 884, 8 L.Ed.2d 70], where in speaking of waiver of the constitutional right to counsel the court held: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

■ The People further point out that apparently neither defendant made an explicit request for counsel as in the *Escobedo* case, and from this circumstance they conclude that the principle of that case is therefore not applicable. But we held in *Dorado* that, under the basic principle of *Escobedo,* the constitutional right referred to in the latter case "does not arise from the request for counsel but from the advent of the accusatory stage itself." (*Ante,* at p. 357.)

The People also argue that because of the independent evidence of defendants' guilt their extrajudicial statements added little to the case against them and therefore any error could not be grounds for reversal (see Cal. Const., art. VI, § 4½). ■ Because of the felony murder rule, however, defendants' statements amounted to confessions of first degree murder (see Pen. Code, § 189), and the use in evidence of such statements obtained in violation of constitutional rights requires reversal regardless of other evidence of guilt. (*People* v. *Dorado, supra, ante,* pp. 338, 356-357; *People* v. *Matteson,* 61 Cal.2d 466, 469-470 [39 Cal.Rptr. 1, 393 P.2d 161].)

The judgment as to each defendant is reversed.

Traynor, C. J., Peters, J., and Tobriner, J., concurred.

SCHAUER, J.,* Dissenting.—I am of the view that the majority opinion in this case does not meet the conditions essential under state law to reversal of the subject judgments.

California's Constitution, which defines and delimits the powers of this court (see §§ 4 and 4½, art. VI) does not empower—to the contrary it forbids—us to reverse a judgment (on any ground here relevant) "unless, after examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (See *People* v. *Watson* (1956) 46 Cal.2d 818, 835-838 [12, 13] [299 P.2d 243].)

The majority do not cite any decision by the United States Supreme Court which holds that compliance by this court with the above cited sections of our Constitution would, in the circumstances of this case, violate any federally guaranteed right of defendants. As pointed out by Justice Burke in his dissenting opinion in *People* v. *Dorado* (1965) *ante*, pp. 338, 365 [42 Cal.Rptr. 169, 398 P.2d 361], the high federal court in *Escobedo*[1] "stresses that each case must be weighed in relation to the totality of its own circumstances." So weighing the circumstances shown in the case at bench, even assuming the error declared by the majority, I find no miscarriage of justice and, hence, no tenable basis for reversal. Accordingly, I would affirm the judgment as to each defendant.

McComb, J., concurred.

Respondent's petition for a rehearing was denied May 26, 1965. McComb, J., and Schauer, J.,* were of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

[1]*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977].