[Crim. No. 10368. Second Dist., Div. Two. Sept. 10, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT LEE WASHINGTON, Defendant and Appellant.

Erling J. Hovden, Public Defender, Charles D. Boags and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert A. Feldman, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—A jury convicted appellant of violating Penal Code, section 12021. Following the denial of appellant's motion for a new trial, the criminal proceedings were suspended and a commitment petition was filed pursuant to Penal Code, section 6451. Appellant filed a timely notice of appeal from the judgment of conviction notwithstanding that

no judgment had been entered. Respondent concedes that the appeal is proper under Penal Code, section 1237, subdivision 2.

On December 16, 1963, appellant was standing with two men on the corner of 31st and Vermont in Los Angeles, Officer Northrup, passing in an unmarked police car, spotted the group of men, all of whom he knew. Appellant apparently saw Northrup at the same time and began to walk away from the group. Northrup parked his car and followed appellant into a shoe store where he observed appellant, who had retreated to the rear of the store behind a rack of shoes, remove a shiny object from his waistband and place it on a box of shoes located on the rack. The object proved to be a .32 caliber revolver.

Northrup testified that when he recovered the gun, appellant's hands appeared to be moist and cold and that appellant was sweating profusely. A portion of appellant's uncovered arm was covered with fresh puncture holes. Northrup asked appellant why he was carrying the gun and if he was using narcotics. Appellant answered that he knew he shouldn't be carrying the gun and had thus tried to get away. He also admitted that he was using narcotics. In Northrup's opinion, given as an experienced narcotics officer, appellant's physical appearance and characteristics at the time of arrest were indicative of a narcotics used.

 Later, at the police building, although the record does not fix the time, appellant was again questioned by Northrup. Northrup testified that ''I asked the [appellant] how much narcotics he was using. At this time he replied, 'I am using all I can get.'

''I asked him when was the last time he had a fix of narcotics, and he stated he fixed last night in a motel. . . .

''I asked him how much he used; he stated at this time he had used an $8 bag.

''I asked him how much he was using a day, and he stated, just as much as he could get. So I said, 'How many bags a day are you using?' He stated, sometimes four or five or six bags a day.

''I asked him what he was using, he stated that he was using heroin and cocaine.''

Appellant admitted that he was ''hooked'' on narcotics and that he had obtained the gun from ''some other guy in a motel.'' That he had it approximately a week but that he didn't know why he was carrying the gun.

Appellant did not testify in his own defense. In its in-

structions to the jury the court gave CALJIC 51 (revised).[1] The prosecutor, in his argument to the jury, also emphasized appellant's failure to take the stand "to take the oath to tell you the truth about this case."

Appellant assigns as error the trial court's instruction to the jury and the prosecutor's comment on his failure to testify. In addition, predicated upon *People* v. *Dorado,* 62 Cal.2d 338, 356 [42 Cal.Rptr. 169, 398 P.2d 361], he questions the admissibility of his statements to the police.

Appellant's first contention is well taken. The prior California law allowing both the court and the prosecutor to comment on a defendant's failure to testify is no longer constitutionally acceptable. (*Griffin* v. *California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106]; *People* v. *Bostick,* 62 Cal.2d 820 [44 Cal.Rptr. 649, 402 P.2d 529].) However, in *Bostick,* the court held that such error is not reversible per se but requires an appellate determination that the error is prejudicial.

The prejudicial nature of this error, however, need not be considered, since, in our opinion, the judgment must be reversed on other grounds. *People* v. *Dorado, supra; People* v *Bostick,* 62 Cal.2d 820, 827 [44 Cal.Rptr. 649, 402 P.2d 529].)

Appellant was subjected to two periods of questioning by the police. The first occurred at the time of his arrest; the second sometime later at the Police Building. The record is silent as to whether appellant was advised at either time of his constitutional rights. Nor does the record indicate that appellant waived any known constitutional rights.

█ Statements of a defendant are inadmissible when an investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect; the suspect was in custody; the authorities carried out a process of interrogations that lent itself to eliciting incriminating statements and the defendant was not informed of his constitutional rights. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 354.) █ In the usual case the first two elements are met by the defendant's arrest; to determine whether the police

---

[1] ". . . As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable. . . ."

have been carrying out a process of interrogations intended to elicit incriminating statements, the total situation encompassing the questioning must be analyzed. (*People* v. *Stewart*, 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97].) ▮ However, the proviso in *Dorado* that nothing contained therein should be interpreted to restrict legitimate police investigatory work must not be lost sight of in applying the exclusionary rule. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 354.)

▮ The admissions obtained from appellant at the time of his arrest were clearly outside the scope of *Dorado.* At that time the sole purpose of the questions posed was to determine whether in fact a crime had been or was being committed. It was not until Northrup concluded that appellant did not have a legitimate purpose for possessing the gun and until Northrup determined that appellant was using narcotics, that reasonable cause arose to arrest appellant for the crime charged. (*People* v. *Ford,* 234 Cal.App.2d 480 [44 Cal.Rptr. 556], hearing denied.) The questions put to appellant at the time of arrest were thus legitimate steps in the investigatory process.

The record does not disclose how soon after arrest the second questioning occurred, who was present or any of its circumstances other than that it took place after arrest at the police station. Since, however, the suspect was under arrest and in custody we must presume, in the absence of any showing to the contrary, that the accusatory or critical stage had been reached and that any questioning by the police amounted to a process of interrogations designed to elicit incriminating statements. The statement of the Supreme Court in *People* v. *Nye,* 63 Cal.2d 166, 174 [45 Cal.Rptr. 328, 403 P.2d 736], is pertinent. Thus at pages 174-175, the Supreme Court stated: ''The evidence is not clear as to . . . the exact nature of the interrogation to which [appellant] was subjected by the . . . police investigators, but it sufficiently appears that the extrajudicial statements were inadmissible by virtue of the decision of the United States Supreme Court in *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]. (*People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] ; *People* v. *Stewart,* 62 Cal.2d 571, 576-582 [43 Cal.Rptr. 201, 400 P.2d 97] ; *People* v. *Lilliock,* 62 Cal.2d 618, 621 [43 Cal.Rptr. 699, 401 P.2d 4] ; *People* v. *Davis,* 62 Cal.2d 806 [44 Cal.Rptr. 441, 402 P.2d 129].) ''

Since the character and detail of the interrogation does not appear, and the case at bench was tried prior to *Dorado,* it is appropriate to add as we said in *People* v. *North,* 233 Cal.

App.2d 884, 887 [44 Cal.Rptr. 123]: "It may reasonably be assumed that these uncertain elements will be more adequately developed and clarified both by the prosecution and by the defense in the course of any further proceedings to be had in this cause."

■ The erroneous admission of an unlawfully obtained confession requires an automatic reversal of the conviction. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 356.) However, in *People* v. *Ford, supra,* this court held that such result does not follow when a later unlawfully obtained confession merely duplicates and reiterates an earlier confession which had been lawfully obtained. We must therefore determine whether appellant's statements at the police station, whether they constituted a confession or incriminating admissions, were comparable to those made prior to and concurrent with his arrest.

■ " 'A confession is a voluntary statement that was made by one who is a defendant in a criminal trial, at a time when he was not testifying in that trial, by which he acknowledged certain conduct of his own that constituted a crime for which he is on trial, a statement which, if true, discloses his guilt of that crime and excludes the possibility of a reasonable inference to the contrary,' [Citations.] ■ A confession 'leaves nothing to be determined, in that it is a declaration of his [defendant's] intentional participation in a criminal act . . .' [Citations.] ■ 'An admission as applied to criminal law is something less than a confession, and is but an acknowledgment of some fact or circumstance which in itself is insufficient to authorize a conviction, and which tends only toward the proof of the ultimate fact of guilt.' . . ." (*People* v. *Beverly,* 233 Cal.App.2d 702, 712 [43 Cal.Rptr. 743].)

■ The statement made at the police building was not a confession. It was, however, a vitally incriminating admission on the subject of addiction.

■ The burden of proof was upon the prosecution to prove that appellant had "in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person" and that he "is addicted to the use of any narcotic drug." Prior to the recent Supreme Court decisions in *People* v. *Victor,* 62 Cal.2d 280 [42 Cal.Rptr. 199, 398 P.2d 391], and *People* v. *O'Neil,* 62 Cal.2d 748 [44 Cal.Rptr. 320, 401 P.2d 928]. it was assumed (*People* v. *Di Blasi,* 228 Cal.App.2d 338 [39

Cal.Rptr. 416]) that the definition of the word "addict" as used in Penal Code, section 12021, was that laid down by the court in *People* v. *Kimbley,* 189 Cal.App.2d 300, 306 [11 Cal.Rptr. 519]. *Victor* and *O'Neil* require a reexamination of the term "addict" within section 12021, consonant with the intent of the Legislature and the application of said definition to appellant's statements in order to determine their nature.

Penal Code, section 12021, is part of the legislative scheme originally promulgated in 1917 (Stats. 1917, ch. 145, p. 221, § 1.) and commonly known as the Dangerous Weapons Control Act. In addition to section 12021, which in practice has been applied principally to cases involving persons convicted of a prior felony, (see *People* v. *Hilliard,* 221 Cal.App.2d 719 [34 Cal.Rptr. 809]) the Legislature established controls over other weapons commonly used for criminal purposes, such as blackjacks, billyclubs and brass knuckles (§ 12020); provided stiffer penalties for those who commit a felony while armed with a weapon prohibited by the Act (§ 12022); and provided for the confiscation and destruction as nuisances of all such prohibited weapons (§§ 12028 and 12029). ▮▮▮ The clear intent of the Legislature in adopting the weapons control act was to limit as far as possible the use of instruments commonly associated with criminal activity. (*People* v. *Mulherin,* 140 Cal.App. 212 [35 P.2d 174]) and, specifically, "to minimize the danger to public safety arising from the free access to firearms that can be used for crimes of violence." (*People* v. *Scott,* 24 Cal.2d 774, 782 [151 P.2d 517].)

▮▮▮ Under the narcotics laws as presently constituted, those addicted to the use of narcotics present a clear and present danger to society. Because of such danger, there can be no doubt that the classification of "addict" contained in section 12021, is entirely reasonable and that the Legislature properly restricts addicts from carrying firearms. Addicts are dependent upon an illegal source of supply, obtainable only at an inflated price. This dependence and need increases as the addict's tolerance to the drug increases. Moreover, as the narcotics user becomes more dependent upon his drug, his ability to function normally in society decreases. The addict is thus forced to obtain the wherewithal with which to purchase drugs through criminal acts either against the person or property of another or through acts of vice such as prostitution or sale of narcotics.

The law recognizes that not all users of narcotics are prone

or find it necessary to deviate from accepted social norms in order to satisfy their habit. Thus, in *People* v. *O'Neil, supra,* 62 Cal.2d 748, 755, the court noted, in distinguishing an addict, the following characteristics of a person habituated to the use of drugs: 1) a desire (but not a compulsion) to continue taking the drug for the sense of improved wellbeing which it engenders; 2) little or no tendency to increase the dose; 3) some degree of psychic dependence on the effect of the drug, but absence of physical dependence and hence an abstinence syndrome; and 4) detrimental effects, if any, primarily on the individual. In contrast the court noted in *People* v. *Victor, supra,* 62 Cal.2d 280, 301, that narcotics addiction is not so much an event as a process. "Among the identifiable stages in this process may be listed the following: (1) introduction to and initial experimentation with the drug; (2) 'joy popping' or occasional use to satisfy personal gratification or social pressures; (3) increasingly frequent use coincident with development of a growing degree of *emotional dependence* on the drug; (4) bodily reaction to such use by development of increasing physical *tolerance*; (5) temporary cessation (whether voluntary or not) of use of the drug, resulting in manifestation of *physical dependence* in the form of withdrawal symptoms; (6) realization by the user of the fact that it was his failure to maintain his intake of the drug that caused the withdrawal distress; (7) continuing use of the drug thereafter for the conscious and primary purpose of forestalling or alleviating withdrawal distress; and (8) concomitant side-effects, such as the tendency towards lowering of the user's anxiety threshold so that normal (nonaddict) instances of nervousness or discomfort become misinterpreted as signs of an impending withdrawal experience and hence increase even further the user's recourse to and dependence on the drug." (*People* v. *Victor,* 62 Cal.2d 280, 301-302 [42 Cal.Rptr. 199, 398 P.2d 391].)

In *People* v. *O'Neil, supra,* 62 Cal.2d 748, the court in determining the meaning of "addicted" within Vehicle Code, section 23105, concluded that the definition was to be found by discovering at what point in this process the individual exhibits characteristics which could operate to impair his driving ability, the legislative objective of prohibiting addicts from driving on the highways. The court there held, "We . . . believe that when an individual has reached the point that his body reacts physically to the termination of drug administration, he has become 'addicted' within the

meaning and purpose of section 23105.'' The court concluded that the prosecution's burden was to prove not that the individual was in an actual state of withdrawal but ''(1) that the defendant has become 'emotionally dependent' on the drug in the sense that he experiences a compulsive need to continue its use, (2) that he has developed a 'tolerance' to its effects and hence requires larger and more potent doses, and (3) that he has become 'physically dependent' so as to suffer withdrawal symptoms if he is deprived of his dosage.'' (At p. 754.)

In contrast to the risk of physical injury to himself and others sought to be protected by Vehicle Code, section 23105, the nexus of which is the physical reaction of one undergoing an abstinence syndrome or withdrawal symptoms, we have indicated that the intent of Penal Code, section 12021, is the control of that degree of social deviation, exhibited by the narcotics user who in response to the demands of his habit, whether his dependency be physical or psychological, (*People* v. *Victor, supra,* at p. 305) is likely to convert the possession of a gun into a crime of violence. ▮ Therefore the point in the addictive process at which a person becomes addicted within the meaning of Penal Code, section 12021, does not require the presence of withdrawal symptoms but only an emotional dependence on any narcotic in the sense that he experiences a compulsive need to continue its use, and an increased tolerance to the drugs' effects, requiring larger and more potent doses.

▮ In light of this definition of ''addicted'' it is apparent that appellant's second statement was tantamount to an admission that he was addicted. Although medical testimony was lacking it was entirely reasonable for the jury to infer from appellant's own admissions that he was ''hooked'' and the quantity of narcotics, heroin and cocaine he took daily, that appellant was addicted to the use of narcotics.

▮ Although appellant admitted possession of the gun in his first statement to the police, his admission that he was using narcotics was not the equivalent of an admission that he was addicted within the meaning of section 12021. Multiple inferences were deducible from this admission, the least of which was that he was only a casual user or habitual user of narcotics instead of an addict. It is thus clear that this first statement standing alone would not have been sufficient to convict appellant of the crime charged.

▮ Appellant's statements in the case at bench were

not of the cumulative nature sanctioned in *People* v. *Ford, supra.* The erroneous admission of appellant's incriminating statement amounting to a confession of one of the necessary elements of the crime, requires a reversal of his conviction. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 356.)

This appeal, as noted at the outset, is from the judgment of conviction. No such judgment was entered, and it is treated as an appeal from the order denying appellant's motion for a new trial.

The order denying the motion for a new trial is reversed.

Herndon, J., and Fleming, J., concurred.