[Crim. No. 9735. In Bank. Mar. 14, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT JOHN DAVIS et al., Defendants and Appellants.

Bernard V. Ousley, under appointment by the Supreme Court, and Stuart J. Faber for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

PETERS, J.—Consideration of these appeals was deferred to await the decision of this court in *People* v. *Rollins*, 65 Cal.2d 681 [56 Cal.Rptr. 295, 423 P.2d 221], to determine whether the rules announced in *Escobedo* v. *Illinois*. 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], were to be applied, wholly or partially, retroactively, or were to be applied prospectively in accordance with the rules announced for the federal courts in *Johnson* v. *New Jersey*, 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]. The *Rollins* case, *supra*, which has now been decided, held that as a matter of state policy the rules announced in *Escobedo*, *supra*, apply to all cases not finally determined on June 22, 1964, the day that case was decided, but that the new rules announced in *Miranda*, *supra*, apply prospectively only to cases tried after June 13, 1966, the day that case was decided. Since the instant case was tried after the date on which *Escobedo*, *supra*, was decided, there is no question but that the rules of that case are applicable but the rules announced in *Miranda*, *supra*, have no application to this appeal because this case was tried before June 13, 1966.

In a nonjury trial defendants were found guilty of violating section 4390 of the Business and Professions Code (forgery of a prescription). They were sentenced to prison. Both have appealed.

The facts are not fully developed. We know that at 12:20 a.m. on April 23, 1964, in the town of Arcadia, police officers stopped an automobile, then being driven by defendant Pihl, because the car did not have operable lowbeam headlights. Defendant Davis was a passenger in that car. To the officers, both defendants appeared to be under the influence of drugs. Neither could produce any identification. They were arrested, and a search of their persons and car revealed a marijuana cigarette and some seconal. The cigarette was

found in the car but the record does not disclose where the seconal was found other than it was obtained by the search.

Apparently by police investigation, it was discovered that the seconal had been purchased at the Hunter Pharmacy in Long Beach on April 20, 1964, by the use of a forged prescription purportedly written by a Dr. Dahlquist. On June 23, 1964, two months after the original arrest, an officer of the Long Beach Police Department, who had previously procured the forged prescription from the pharmacy, questioned Davis in an interrogation room of the narcotics bureau.

When asked to state the conversation the officer testified as follows: "I showed Davis People's Exhibit 1 [the forged prescription] and asked him if he wrote it. He looked at the prescription and said, 'Yes, that looks like me.' I asked him what he had done with the medication he had received on the prescription. He stated he didn't know, part of it was in his possession when he was arrested in Arcadia. I asked him why he had written the prescription and he stated he just wanted to see if he could do it. I then asked why he had written it for seconal tabs when seconal usually comes in capsule form. He said that was the way Dr. Pike did it. I asked him what happened when he went to fill the prescription. He said he had been driven there by defendant Pihl in Pihl's car and that Pihl had been spooky and didn't want to take a chance on getting caught so he had stayed outside in his car instead of going in the drug store with him. He said he didn't have any more prescriptions out around town."

In response to a further question, the officer testified that he asked Davis what drug store he went to, and Davis gave the name of the pharmacy and its location.

Shortly after questioning Davis the officer questioned Pihl, also at the narcotics bureau. With regard to that conversation the officer testified as follows: "I talked with Mr. Pihl regarding the charge. He told me about a week prior to Davis having passed the prescription at Hunter's that he had been in the Harriman Jones Medical Clinic and he had stolen two or three blank prescription blanks. I asked him why he took the blanks. He stated a short while earlier it had been suggested to him by Davis that they could be used. He said when he was in the office he found himself alone in there and he just picked them up. He told me he had taken the prescription blanks home to the apartment he shared with Davis at 187 Corona and gave them to Davis and later drove Davis up to the Hunter Pharmacy and waited outside while Davis went in

and passed the prescription. He said after Davis came out Davis gave him two or three of the capsules and he used them that afternoon when he went to play touch football. That was the substance of the conversation on this charge.''

Defendants did not testify. It is not clear from the record whether defendants were in actual custody at the time they made the statements, or what were their activities between April 23, the date of arrest, and June 23, the date of the conversations with the officer. Apparently Davis had been convicted of possession of marijuana in a separate proceeding not involved here, but the record does not show the date of such conviction. Similarly the record does not show the disposition of the charges for which Pihl was arrested on April 23. The record is completely silent as to whether defendants were advised of their right to counsel and their right to remain silent as required by *Escobedo, supra,* as interpreted in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

The testimony with regard to the extrajudicial statements of defendants was introduced into evidence at the preliminary hearing held on July 1, 1964. At the trial held on October 28, 1964, the parties stipulated that the transcript of the preliminary hearing could be received in evidence subject to any objections which might be urged, and that any party might offer additional evidence. The only independent evidence offered at the trial related to the arrest of April 23. The officer who had testified at the preliminary hearing with regard to the statements of defendants was not called at the trial. At the conclusion of the trial defendants moved to strike the statements of the defendants on the basis of *Escobedo* v. *Illinois, supra,* 378 U.S. 478, and *People* v. *Dorado, supra,* 62 Cal.2d 338, which was then pending on rehearing. The motion was denied.[1]

Confessions of the type here involved cannot be introduced into evidence where ''(1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of

[1]In denying the motion to strike the trial judge indicated his belief that *Escobedo, supra,* was not applicable because in that case, unlike the instant one, there was a request for counsel. The judge stated that it was his belief that this court on the rehearing of *Dorado, supra,* then pending, would hold that a request for counsel was indispensable to bring into play the rules of *Escobedo, supra.* This prophecy, of course, turned out to be wrong.

interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights." (*People* v. *Dorado, supra,* 62 Cal.2d 338, 353-354.)

The burden of laying a foundation for the admission of statements of the defendant and showing compliance with *Dorado* is on the prosecution. In *People* v. *Schader,* 62 Cal.2d 716, 727 [44 Cal.Rptr. 193, 401 P.2d 665], it was stated: "Just as the trial judge should find that a confession is voluntary before it may be admitted (*Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205]; see *People* v. *Gonzales* (1944) 24 Cal.2d 870, 876-877 [151 P.2d 251]), he should find, before admitting the confession, that it was not obtained in violation of defendant's right to counsel." It is settled that before confessions or admissions may be used against a defendant, the burden is on the prosecution to show that they were voluntary and not coerced (*People* v. *Underwood,* 61 Cal.2d 113, 121 [37 Cal.Rptr. 313, 389 P.2d 937]; *People* v. *Gonzales,* 24 Cal.2d 870, 876 [151 P.2d 251]), and similarly before the trial judge may make the requisite finding of compliance with *Dorado,* the prosecution is required to show that the right to counsel was observed.

It has been held that we "cannot presume in the face of a silent record that the police informed defendant of his right to remain silent and of his right to counsel. (See *Carnley* v. *Cochran* (1962) 369 U.S. 506 [8 L.Ed.2d 70, 82 S.Ct. 884].)" (*People* v. *Stewart,* 62 Cal.2d 571, 581 [43 Cal.Rptr. 201, 400 P.2d 97], affd. *sub nom. Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) A waiver of those rights may not be presumed from a silent record. (*People* v. *Lilliock,* 62 Cal.2d 618, 621-622 [43 Cal. Rptr. 699, 401 P.2d 4]; *People* v. *Schader, supra,* 62 Cal.2d 716, 727.) And the burden is on the prosecution to show that statements obtained from a defendant by police officers were the result of something other than a process of interrogation designed to elicit incriminating statements. (*People* v. *Stockman,* 63 Cal.2d 494, 498-499 [47 Cal.Rptr. 365, 407 P.2d 277].)

Quite clearly, the burden of showing whether defendants were or were not in custody and whether or not the investigation had focused on defendants should rest on the

prosecution. The evidence on these issues ordinarily is in possession of the prosecution, and not easily available to the defense. This is an important factor in determining who has the burden of proof (see Witkin, Cal. Evidence (1958) § 56, p. 74; cf. *People* v. *Stockman, supra,* 63 Cal.2d at p. 499). This is part of the foundation that the prosecution must lay before the confessions are admissible.

It is true that section 1981 of the Code of Civil Procedure provides that the party holding the affirmative of the issue must produce the evidence to prove it. But the phrase ''affirmative of the issue'' frequently lacks substantial meaning. (See Witkin, Cal. Evidence (1958) § 56, pp. 72-73.) Who has the ''affirmative of the issue'' depends on how the issue is phrased. Thus, if it is phrased to pose the question whether the right to counsel was observed, the prosecution has the affirmative, whereas if it is asked whether there has been a denial of the right to counsel, the defense has the affirmative of the issue. The same situation, of course, exists as to the issues of voluntariness and coercion. The code section is of little help in determining this problem.

The prosecution, in the instant case, did not meet its burden of showing that the investigation had not focused on defendants prior to their statements in the interrogation room,[2] that they were free from custody at that time, that they were advised of their rights to counsel and to remain silent, or that they waived their rights.

Nor did the prosecution meet its burden of showing that the statements were the product of something other than a process of interrogations that lent itself to eliciting incriminating statements. In *People* v. *Stewart, supra,* 62 Cal.2d at p. 578, it was noted that ''in most cases the process of interrogations following an arrest will so lend itself. . . .'' It was there suggested that in determining whether there has been a process of interrogations, the trial court must consider such factors as ''the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct

---

[2]It inferentially appears that the officers knew the prescription was a forgery when they interviewed Davis. Certainly there is nothing in the record to indicate that they did not know this fact when they interviewed him. The record is silent as to whether the seconal was obtained from Davis, or from Pihl, or from the car. Pihl was not interviewed until after Davis had confessed and implicated Pihl. Thus as to Pihl it positively appears that the investigation had focused on him when he was interviewed.

of the police and all other relevant circumstances.'' (*Id.* at p. 579.)

In the present case the record is incomplete as to most of the factors enumerated in *Stewart, supra.* The nature of the questions asked of Davis, the confrontation with the forged prescription, and the location of the interrogation strongly indicate that there was a process of interrogations designed to elicit incriminating statements. Although the length of the questioning, as related by the officer, seems to have been short, it appears that the questions asked constituted a process of interrogation. Moreover, it is not clear whether the officer intended to relate the entire conversation or merely that part of it which was incriminating. With regard to Pihl, the situation is the same except that the officer's testimony, both at the beginning and the end, implies that there were other conversations between him and Pihl which did not relate to the forgery charge. Under such circumstances, it cannot be said that the prosecution sustained its burden of showing that the statements were the result of something other than a process of interrogations.

Thus, the statements of both defendants were erroneously admitted into evidence in violation of the rules announced in *Escobedo, supra,* and *Dorado, supra.* The error was obviously prejudicial, not only because the statements were confessions, but also because without the statements the evidence is not sufficient to sustain the convictions.

The judgments are reversed.

Traynor, C. J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgments for the reasons expressed by Mr. Justice Kingsley in the opinion prepared by him for the Court of Appeal in *People* v. *Davis* (Cal.App.) 47 Cal.Rptr. 332.