[Crim. No. 11055.   Second Dist., Div. One.   June 12, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS FLANNIGAN, Defendant and Appellant.

Robert Landon Kirste, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard D. Huffman, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of murder in the second degree.

In an information filed in Los Angeles County on January 23, 1963, defendant was charged with murdering Monroe Porter on December 28, 1962. It was further charged that defendant previously had been convicted of robbery in 1949 and had served a term therefor in a state prison. Defendant was arraigned on January 23d, 1963, and on January 28th, 1963, he pleaded not guilty and denied the charged prior

conviction. Trial was set for March 7th, 1963, and on that date defendant made a motion, pursuant to section 1871, Code of Civil Procedure, and the court appointed Doctor McNiel to examine defendant with reference to his mental condition. The key witness for the prosecution was unavailable and the trial was continued to April 8, 1963. On the latter date defendant entered an additional plea of not guilty by reason of insanity, and, further, upon motion of the defendant the court appointed Doctor Marinacci to perform an electroencephalograph examination of defendant. The trial was continued to June 4, 1963, upon motion of defendant. On June 17th, 1963, a jury trial was waived and in effect it was stipulated that the hearings on the respective pleas would be consolidated for all purposes as to the testimony of the doctors. The judge found the defendant guilty of murder in the second degree and found that defendant was sane at the time of the commission of the offense and at the time of trial. No disposition was made of the charge of the prior conviction, although there can be no doubt of the truth of such charge for the defendant himself testified that he had been so convicted and the records support such testimony. In any event, defendant was sentenced as a first offender. Motions for a new trial and for probation were denied and judgment was pronounced on July 19, 1963.

A timely notice of appeal was not filed. Defendant wrote a letter to the clerk of the superior court on September 30. 1963, wherein he made inquiry as to whether a notice of appeal had been filed. On October 2 and October 14, 1963, defendant attempted to file a late notice of appeal. In a proceeding before the Supreme Court the attorney testified that he had not promised to file a notice of appeal; however, the court held that the defendant should be entitled to file the notice of appeal and ordered such accordingly in an opinion filed November 17, 1964. On December 17, 1964, the clerk of the Supreme Court wrote to the clerk of the superior court advising the latter, in effect, that the Supreme Court had ordered the filing of the notice of appeal and the preparation of the record on appeal.

On July 23, 1965, defendant filed what he termed an opening brief. On July 28, 1965, defendant requested this court to appoint counsel for him and present counsel was appointed to represent defendant on the appeal. On January 5, 1967, this court, not having received any brief prepared by defendant's appointed counsel, directed counsel to file a brief with-

in 20 days. On February 6, 1967, a brief was filed by counsel for defendant and respondent's brief was filed on March 9, 1967.

A résumé of some of the facts is as follows: Monroe Porter was a bartender in the establishment known as the Orbit Room, located at or near Adams Boulevard and Palm Grove Avenue in Los Angeles, on or about December 26th or 27th, 1962. Virginia Howard worked as a cocktail waitress at the establishment from 6 p.m. to 2 a.m. At about 10 p.m. on December 26, 1962, defendant entered the place of business. There were about 30 persons present at the time. Defendant was talking with a group at a table when an argument started between Porter and defendant as to whether defendant should be served another drink and as to whether defendant should pay for prior drinks served. At that point, which was about 10:45 p.m., defendant said, "I will kill you." Defendant thereafter left the bar and was gone for about 35 to 40 minutes, and then returned to the barroom, at which time he went to the service bar, raised up the same, exhibited a loaded .38 caliber revolver and stated to Porter, "[Y]ou son-of-a-bitch, I am going to kill you." Porter backed up while behind the bar and told defendant to put down the gun. Defendant then fired five shots from the gun, three of which entered Porter and from which he died. Defendant was heard to say after the shooting that he was going to see Porter die.

Defendant left the barroom and apparently went to the place where he stayed on Adams Boulevard, several blocks away. The police arrived at the bar in a few minutes and observed Porter lying on the floor behind the bar in a pool of his own blood. At about 12:15 a.m., December 27th, 1962, the police talked to defendant at his residence.

Officers Guzy and Jackson, and Sergeant Gerow, of the Los Angeles Police Department, interviewed defendant in the early hours of December 27th. The statements made by defendant to the police were made freely and voluntarily and were tape-recorded. The statements were received into evidence and show clearly that defendant was guilty of murder as charged, although he did make a garbled effort to indicate that the killing was in self-defense.

The defendant testified in his own behalf, and during cross-examination the prosecutor frequently used the defendant's statements made to the police to show contradictory statements by the defendant.

Appellant now makes several contentions as to why the judgment should be reversed and respondent "submits that the judgment of conviction should be reversed and the case remanded for a new trial."

The only issue with which we need to concern ourselves at this time is whether under *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and other similar cases, the court erred in admitting into evidence the full, complete, free and voluntary confession of defendant when there was no showing that the police had advised defendant, in December 1962, of the newly-founded constitutional rights which would be turned up in 1964, 1965 and 1966.

The record does not disclose that the police advised appellant of his right to remain silent, that statements could be used against him or that he had a right to have an attorney to represent him, and that if he did not have the means to engage an attorney, the county would provide him with an attorney. (See *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; *People* v. *Dorado* (1965) *supra*, 62 Cal.2d 338, and *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

Under *People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal. Rptr. 293, 423 P.2d 221], "as a matter of state policy the rules announced in *Escobedo, supra,* apply to all cases not finally determined on June 22, 1964, the day that case was decided, but that the new rules announced in *Miranda, supra,* apply prospectively only to cases tried after June 13, 1966, the day that case was decided." (*People* v. *Davis*, 66 Cal.2d 175, 177 [57 Cal.Rptr. 130, 424 P.2d 682].)

Although it was generally believed in this case that the judgment of July 19, 1963, was final on January 22, 1964, the Supreme Court did hold, in effect, in December 1964, that the judgment was not final at all and permitted the defendant to file his late notice of appeal.

Although there was ample and sufficient evidence to convict the appellant of murder without the confession, and unquestionably the confession made little or no difference in the outcome in this case, the rule is that if the confession is "violative of *Escobedo* and *Dorado* [it] necessarily compels reversal of the resulting conviction since a confession so completely shatters a defendant's case that its erroneous use at his trial works incalculable damage and precludes a finding of harmless error notwithstanding overwhelming extrinsic evi-

dence of guilt." (*People* v. *Spencer*, 66 Cal.2d 158, 163 [57 Cal.Rptr. 163, 424 P.2d 715].)

The rules of *Escobedo, Dorado, supra,* and others of similar vein, were adopted supposedly to discipline the police—are the police disciplined by a reversal of this judgment? The scales are weighted heavily for the appellant in this case and against the vast number of law-abiding citizens of the community, for a perusal of the record in this case can leave no doubt about what course of conduct will take place in the future insofar as appellant is concerned.

This court is placed in the unfortunate position of not being permitted to make a search for the truth as to whether appellant murdered his victim; to the contrary, under the law of the cases, we are compelled to make a search for a technicality which results in a reversal of the judgment.

The most fundamental freedom of all is the freedom against the arbitrary interference with one's bodily security or property. There can be no doubt as to whether appellant is guilty of a premeditated murder; a wilful, deliberate and senseless killing. This case will add nothing toward a rekindling of a respect for law and order, nor will it make any law-abiding person feel more secure while on the street or in a public park, but it will add one more figure to the statistics which are as familiar as they are appalling.

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.