[Crim. No. 13620.   Second Dist., Div. Five.   Jan. 5, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. ADOLPH CASTRO, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Woodruff J. Deem, District Attorney, and Randolph E. Siple, Deputy District Attorney, for Plaintiff and Appellant.

Barnes, Benton, Orr, Duval & Buckingham, Edwin Duval and James McGahan for Defendant and Respondent.

KAUS, P. J.—On December 29, 1966, the District Attorney of Ventura County filed a complaint against respondent charging him with violations of sections 11500, 11500.5, 11530 and 11530.5 of the Health and Safety Code.

We take our summary of the facts which were adduced at the preliminary hearing from defendant's brief: "At 5:00 p.m. on December 6, 1966, five officers went to defendant Adolph Castro's residence in Ventura. The officers were James Burgess, a Detective Sergeant for the Ventura County

Sheriff's Department; John Thompson, a State Bureau of Narcotics agent; Detective Bowen, of the Oxnard Police Department; Detective Taylor, of the Sheriff's Department; and Detective Hurly, of the Oxnard Police Department. Detective Bowen 'had information that there was a large quantity of narcotics at the residence at 106 Sunny Way, including heroin, marijuana and some dangerous drugs.' The purpose of their visit was 'to pick up some narcotics.'

''106 Sunny Way is a single dwelling. Detective Burgess knocked and defendant Castro came to the door. There was an elderly lady inside the house, and three or four small children. Detective Burgess identified himself 'and his compatriots,' showed defendant a form of identification, and asked him to 'please step outside, I would like to talk to him.'

''Defendant came outside the house, stepped off the porch and stood on a walk with Detective Burgess and Detective Bowen. Burgess thereupon 'advised defendant that I was there on a follow-up from a previous arrest of Benny Castro,' defendant's nephew, and that 'there was a reason to believe there was narcotics at the residence.' Burgess said:

'' 'I advised the defendant that I had reason to believe that there were narcotics on the premises. I then asked the defendant if there were any narcotics in the residence or in the house and he stated to me that there wasn't. I then asked him if there were any narcotics on the premises. He again stated that there wasn't. . . .' That was not all Detective Burgess said.

'' 'I told him that we had reason to believe that there were narcotics on the premises. At that time I didn't know who they belonged to, but *that we might as well clear up the matter at this time.'*

''After a 'slight delay,' defendant advised Detective Burgess to come on and follow him. Defendant took the officers to a shed at the back of the premises, opened the garbage can, took out a paper sack, and handed it to Agent Thompson. Thompson examined it, and Burgess asked, 'Isn't there any marijuana?' Defendant said 'Maybe there is another sack in here' and took out another sack which he gave to Thompson.

''The two sacks were found to contain heroin, seconal, marijuana and benzedrine. Defendant was arrested on December 21, 1966.''

At the preliminary hearing there was no objection of any kind to the admission of evidence.

After defendant was bound over on all four counts and the information filed in the superior court, a motion to dismiss under section 995 of the Penal Code was granted. The specific basis for the granting of the motion was that defendant's helpfulness amounted to "assertive conduct," that he was in custody and that he had not been advised of his constitutional rights. The superior court also found that, the question of the violation of defendant's *Miranda* rights aside, there was sufficient evidence in the record that he should stand trial.

The question whether the evidence discloses a consent search, as urged by the People, or a communication by defendant after he was placed in custody within the meaning of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *People* v. *Arnold,* 66 Cal.2d 438, 446-447 [58 Cal.Rptr. 115, 426 P.2d 515] and *People* v. *Kelley,* 66 Cal.2d 232, 246 [57 Cal.Rptr. 363, 424 P.2d 947], is interesting but in view of the lack of an objection at the preliminary hearing not really before us. ██ The People point out that *Robison* v. *Superior Court,* 49 Cal.2d 186 [316 P.2d 1] squarely holds that failure to object to illegally obtained evidence at a preliminary hearing allows the magistrate to consider such evidence. (Cf. *People* v. *Hyde,* 51 Cal. 2d 152, 157 [331 P.2d 42].) Defendant argues that *Robison* involved a writ of prohibition after a 995 motion was denied. We do not see the difference. In *Robison* the question was whether the 995 motion was properly denied. In the case at bar we must decide whether it was properly granted. The criteria are the same.

Defendant also argues that the problem is not his failure to object but the prosecution's failure to sustain its burden of showing that his *Miranda* rights were not violated. (*People* v. *Arnold, supra,* p. 448; *People* v. *Davis,* 66 Cal.2d 175, 180-181 [57 Cal.Rptr. 130, 424 P.2d 682]; *Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].)

██ While it is perfectly true that in the area of coerced confessions the lack of an objection in the trial court does not preclude review on appeal (*People* v. *Matteson,* 61 Cal.2d 466, 469 [39 Cal.Rptr. 1, 393 P.2d 161]; *People* v. *Rand,* 202 Cal.App.2d 668, 672-674 [21 Cal.Rptr. 89]), cases involving confessions obtained without compliance with the rules announced in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] have uniformly required an objection as a prerequisite for appellate consideration (*People* v. *Ray,* 252

Cal.App.2d 932, 958 [61 Cal.Rptr. 1]; *People* v. *Crooks,* 250 Cal.App.2d 788, 793 [59 Cal.Rptr. 39]) although this requirement does not apply to trials before the date of the second *Dorado* decision on January 29, 1965. (*People* v. *Doherty,* 67 Cal.2d 9, 14-15 [59 Cal.Rptr. 857, 429 P.2d 177].)

Although no case involving a hearing after the *Miranda* decision has been cited to us, we see no reason why the rule should be different.[1]

The difference between the coerced confession cases and those involving a violation of *Dorado* and *Miranda* is undoubtedly due to two factors: first, the difference in the trustworthiness;[2] and second, the fact that confessions obtained in violation of *Miranda* and *Dorado* are far less offensive to the underlying principles in the enforcement of our criminal laws. Were it otherwise, *Johnson* v. *New Jersey,* 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]; *People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221] and *In re Lopez,* 62 Cal.2d 368 [42 Cal.Rptr. 188, 398 P.2d 380] could not have been written.

The order setting aside the information is reversed.

Hufstedler, J., and Stephens, J., concurred.

---

[1] The preliminary hearing in the case at bar took place on December 29, 1966, well after *Miranda.*

[2] We recognize, of course, that a coerced confession is inadmissible even if proved to be true. (*Rogers* v. *Richmond,* 365 U.S. 534, 540-541 [5 L.Ed.2d 760, 766-767, 81 S.Ct. 735]; *People* v. *Ditson,* 57 Cal.2d 415, 440-441 [20 Cal.Rptr. 165, 369 P.2d 714]; *People* v. *Matlock,* 51 Cal.2d 682, 697 [336 P.2d 505, 71 A.L.R.2d 605].)