[Crim. No. 886.  Third Appellate District.—January 15, 1926.]

# THE PEOPLE, Respondent, v. JOHN McCLOSKEY, Appellant.

[1] CRIMINAL LAW—OWNERSHIP AND POSSESSION OF FIREARM—ACT OF LEGISLATURE (STATS. 1923, P. 695)—EX POST FACTO LAWS.—The fact that the act of the legislature (Stats. 1923, p. 695) makes it unlawful for a person who has been convicted of a felony against the property of another to own or possess a firearm capable of being concealed upon the person, even though such person lawfully owned and possessed such firearm before the act went into effect, does not make said act an *ex post facto* law, nor does it deprive such person of his property without due process of law.

[2] ID.—ACT RELATING TO FIREARMS—POLICE POWER.—The act of the legislature (Stats. 1923, p. 695), relating to the possession of firearms, is a valid and reasonable exercise of the police power of the state.

[3] ID.—POLICE POWER—LEGISLATURE—PRIVATE PROPERTY RIGHTS.— The legislature in the exercise of the police power may restrain dangerous practices and regulate the carrying and use of firearms and other weapons in the interest of the public safety. Private property rights of individuals are required to yield when in conflict with reasonable police regulations.

[4] ID. — VESTED RIGHTS — PUBLIC SAFETY. — No one can acquire a vested right to continue in possession of that which is a menace to the public safety.

[5] ID.—VIOLATION OF ACT—CHARACTER OF REVOLVER—CONCLUSION OF JURY—EVIDENCE.—In this prosecution for a violation of section 2 of the act of the legislature (Stats. 1923, p. 695), which provides that no person who has been convicted of a felony against the person or property of another shall own or have in his possession or under his custody or control any revolver capable of being concealed upon the person, it cannot be said that the jury

1.  See 26 Cal. Jur. 576; 7 Cal. Jur. 844.
2.  See 26 Cal. Jur. 576.
3.  See 26 Cal. Jur. 576.
5.  What are weapons within offense of carrying weapons, notes, Ann. Cas. 1913E, 513; 34 L. R. A. (N. S.) 1174.  See, also, 8 R. C. L. 290.

was not justified in concluding, from an inspection of the revolver and cartridges, together with the testimony, that the revolver was capable of firing such cartridges.

---

(1) 12 C. J., p. 1101, n. 26, p. 1202, n. 62.  (2) 40 Cyc., p. 853, n. 15.  (3) 12 C. J., p. 931, n. 31; 16 C. J., p. 517, n. 64 New. (4) 12 C. J., p. 959, n. 1 New; 40 Cyc., p. 857, n. 49 New, p. 861, n. 82.  (5) 40 Cyc., p. 857, n. 49 New, p. 862, n. 86.

APPEAL from a judgment of the Superior Court of Placer County and from an order denying a new trial. J. B. Landis, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Lee Gray and Boyer & Havens for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant was charged with the crime of having "in his possession and under his control a certain firearm, to-wit: a revolver capable of being concealed upon the person, he, the said John McCloskey having been convicted of a felony against the property of another, to-wit: burglary in the second degree." He was convicted and sentenced to imprisonment in the state prison. This appeal is from the judgment of conviction and the order denying his motion for a new trial.

The evidence shows that the defendant was the owner of the revolver and that, at the time of his arrest, he was carrying it in the pocket of the right-hand door of an automobile owned and then being driven by him. Three cartridges fitting the revolver were in the same pocket. He admitted that he had been convicted of the alleged burglary.

Section 2 of the act under which the defendant was prosecuted, in so far as applicable to the questions here presented, provides: "No person who has been convicted of a felony against the person or property of another . . . shall own or have in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person." (Stats. 1923, p. 696.) Section 15 provides: "This act shall not apply to antique pistols or revolvers incapable of use as such."

[1]  The court refused to permit the defendant to prove that he owned and had possession of the revolver prior to the time the act went into effect.   Appellant contends that "one cannot lawfully be convicted of a crime for continuing to own and possess that which had lawfully become his property," that as applied to such property the act is an *ex post facto* law, and that to punish the owner for continuing in possession thereof would be to deprive him of his property without due process of law.   [2]  It has been held in a number of cases that the act is a valid and reasonable exercise of the police power of the state.   [3]  "It is a well-recognized function of the legislature in the exercise of the police power to restrain dangerous practices and to regulate the carrying and use of firearms and other weapons in the interest of the public safety. . . . Private property rights of individuals are required to yield when in conflict with reasonable police regulations."   (*In re Rameriz,* 193 Cal. 633, 650 [34 A. L. R. 51, 226 Pac. 914, 921]; *People* v. *Gonzales,* 72 Cal. App. 626 [237 Pac. 812]; *People* v. *James,* 71 Cal. App. 374 [235 Pac. 81]; *People* v. *Camperlingo,* 69 Cal. App. 466 [231 Pac. 601]. See, also, *People* v. *Smith,* 36 Cal. App. 88 [171 Pac. 696].)   The danger to the public safety from the indiscriminate carrying of deadly weapons, especially by persons who are criminally inclined, is a matter of common knowledge and, as justifying the regulation of the practice thereof by the state in the exercise of its police power, the evil is comparable to that of the use of intoxicating liquors. In *Samuels* v. *McCurdy,* 267 U. S. 188 [37 A. L. R. 1378, 69 L. Ed. 568, 45 Sup. Ct. Rep. 264], the supreme court of the United States had under consideration a statute of the state of Georgia which made it unlawful to possess intoxicating liquor which had been lawfully acquired before the passage of the statute. It was contended that the law, "under which liquor lawfully acquired can be seized and destroyed, is an *ex post facto* law" and that "the law, in punishing the owner for possessing liquor he had lawfully acquired before its enactment, deprives him of his property without due process." Both contentions were overruled.  The court said: "This law is not an *ex post facto* law.  It does not provide a punishment for a past offense.  It does not fix a penalty for the owner for having become possessed of the liquor.

The penalty it imposes is for continuing to possess the liquor after the enactment of the law. . . . The ultimate legislative object of prohibition is to prevent the drinking of intoxicating liquor by anyone because of the demoralizing effect of drunkenness upon society. The state has the power to subject those members of society who might indulge in the use of such liquor without injury to themselves to a deprivation of access to liquor in order to remove temptation from those whom its use would demoralize, and to avoid the abuses which follow in its train. . . . The legislature has this power, whether it affects liquor lawfully acquired before the prohibition or not." The foregoing principles of law are applicable to the facts of this case. [4] No one can acquire a vested right to continue in possession of that which is a menace to the public safety.

Appellant contends that the weapon is an "antique . . . revolver incapable of use as such." The weapon "is a 32 caliber short cartridge revolver. . . . Five shots, . . . nickel plated, ivory handle," with a three-inch barrel and a total length of seven inches. At the time of the trial it was "quite rusty." "If you pull the hammer once it is stuck and will not work any more. . . . And it is necessary to take hold of the trigger and shove the trigger forward to get it to work again." The sheriff and his deputy both testified that in their opinion the revolver was in such mechanical condition that it could be fired. The former stated that it was doubtful whether the hammer of the revolver would "strike sufficiently hard to explode those old shells (referring to the three cartridges found with the revolver) but I believe you put new shells in that gun right now and pull the trigger it would go off." In the revolver there was one empty shell which evidently had not been discharged recently. Two of the three cartridges were indented, indicating that an unsuccessful attempt had been made to fire them. Relative to the three cartridges the sheriff testified: "In my opinion there would be two reasons why those shells would not explode. . . . The shell itself appears to be an old shell. In order to explode it a gun would have to be in first class condition. Q. It would take an especially hard concussion of the firing pin to shoot these particular shells? A. As old as they are,—yes, sir. Q. What other reason? A. The matter of fact that the

gun was not capable of hitting with sufficient force to explode the old shell.  Q. Two of the shells are indented? A. Yes.  Q. The third one was not?  A. Was not.  Q. And there was one exploded shell in the chamber of the gun? A. There was.  Q. What would you say as to the nature of shells fired from a gun as to some of them going off and others not,—does that happen?  A. It does quite frequently, —age and the nature of the gun,—the primer as you call it. . . . When we first took the gun in our possession it was not quite as bad condition as at the present time, but it was not in condition at the time we received it.  Q. Not in good condition then?  A. No.''  The revolver and the cartridges were introduced in evidence and the jurors had the benefit of their examination thereof.  [5]  It cannot be said that the jury was not justified in concluding, from an inspection of the revolver and the cartridges, together with the foregoing testimony, that the revolver was capable of firing such cartridges.  ''Although the courts to some extent differ as to what conditions will destroy the efficiency of a weapon, the rule seems to be established that no matter how disabled a weapon may be, if it still retains its efficiency to such an extent that it may in some manner be used as originally intended, a person carrying such a weapon contrary to law will be held criminally liable. . . . It has been held that whether a pistol carried is loaded or unloaded is immaterial, and does not affect the criminal liability of the person carrying it.''  (8 R. C. L. 290; Ann. Cas. 1913E, 513; 34 L. R. A. (N. S.) 1174.)  The court instructed the jury in accordance with the foregoing quotation.

The judgment and the order are affirmed.

Plummer, J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 13, 1926, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 11, 1926.