[No. E009011. Fourth Dist., Div. Two. May 27, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID EUGENE MILLS, Defendant and Appellant.

**COUNSEL**

Jeffrey J. Stuetz, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Rudolf Corona, Jr., and Joyce N. Burnett, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.**—A jury convicted defendant Mills of possession of a firearm by a convicted felon in violation of Penal Code section 12021, subdivision (a). He appeals contending that (1) the 1990 amendment to Penal Code section 12021, subdivision (a) is an ex post facto law as to him, and (2) his conviction should be reversed on due process and equal protection grounds because he was not actually personally notified of the amendment to the law, while persons actively on probation were notified.

## FACTS

The relevant facts are simple and undisputed. On July 6, 1981, defendant was convicted of possession of marijuana for sale, a felony. (Health & Saf. Code, § 11359.) He was placed on probation for five years.

At the time of defendant's 1981 conviction, Penal Code section 12021, subdivision (a) read as follows: "Any person who has been convicted of a felony under the laws of . . . California . . . who owns or has in his possession or under his custody or control *any pistol, revolver, or other firearm capable of being concealed upon the person* is guilty of a public offense . . . ." (Italics added.)

In 1989, Penal Code section 12021, subdivision (a) was amended, effective January 1, 1990, to read as follows: "Any person who has been convicted of a felony under the laws of . . . California . . . who owns or has in his or her possession or under his or her custody or control *any firearm* is guilty of a felony." (Stats. 1989, ch. 1044, § 3, italics added.)

In July 1990, defendant brought a shotgun into a sporting goods store to have the gun repaired. The proprietor of the store, a California Highway Patrol officer, subsequently inquired about defendant's prior record. The officer then learned of the prior felony conviction.

Defendant was arrested on July 19, 1990, for being a felon in possession of a firearm in violation of Penal Code section 12021, subdivision (a). His trial and this appeal followed.

## INTRODUCTION

■ The United States Constitution (art. I, §§ 9 and 10) and the California Constitution (art. I, § 9) prohibit the passage of ex post facto laws. The clearest example of such a law is one which defines a new crime and applies its definition retroactively to conduct which was not criminal at the time it occurred.

"Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. [Citations.] The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation. [Citations.] [¶] In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring

before its enactment, and it must disadvantage the offender affected by it." (*Weaver* v. *Graham* (1981) 450 U.S. 24, 28-29 [67 L.Ed.2d 17, 23, 101 S.Ct. 960].)

There is no significant difference between the federal and state constitutional provisions. (*Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 295-297 [279 Cal.Rptr. 592, 807 P.2d 434].) " '[T]he principle on which the [ex post facto] Clause is based—the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties—is fundamental to our concept of constitutional liberty.' " (*People* v. *Wharton* (1991) 53 Cal.3d 522, 586 [280 Cal.Rptr. 631, 809 P.2d 290].)

Most of the difficulties in applying the constitutional provisions occur in the interpretation of the prohibitions against retroactively increasing punishment for a crime which carried a lesser penalty when committed. (1 LaFave & Scott, Substantive Criminal Law (1986) § 2.4, p. 136.) Defendant attempts to bring himself within this category.

### Was Defendant's Punishment Retroactively Increased?

Defendant contends that the 1990 change in the law increases the punishment for his 1981 conviction, and is therefore a prohibited ex post facto law. He relies on *Collins* v. *Youngblood* (1990) 497 U.S. 37, 41 [111 L.Ed.2d 30, 38, 110 S.Ct. 2715]. In that case, the Supreme Court discusses the meaning of the ex post facto clause of the federal Constitution. (U.S. Const., art. I, § 10.) The court begins with the meaning of the term: "Although the Latin phrase '*ex post facto*' literally encompasses any law passed 'after the fact,' it has long been recognized by this Court that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." (*Id.*, at p. 41 [111 L.Ed.2d at p. 38.)

The court then quotes the accepted definition of ex post facto laws from the early case of *Calder* v. *Bull* (1798) 3 U.S. (3 Dall.) 386, 390-392 [1 L.Ed. 648, 650]: " '1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates a crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offense, *in order to convict the offender*.' " (*Collins* v. *Youngblood, supra*, 497 U.S. 37, 42 [111 L.Ed.2d 30, 38-39] quoting *Calder*

v. *Bull, supra*, 3 U.S. (3 Dall.) 386, 390-392 [1 L.Ed. 648, 650]. Italics in original.)

Relying on the second and third elements of the *Calder* definition,[1] defendant states his position clearly: "When appellant was convicted of a felony in 1981 one of the legal consequences of that conviction was the penalty and disability of owning or possessing a concealable firearm, and any attempt to increase or make that disability more onerous retroactively by precluding possession of *all* firearms constitutes an *ex post facto* law."

Our own Supreme Court has recently quoted *Collins* in determining whether Proposition 115 should be applied to prosecutions of crimes committed before its effective date. (*Tapia* v. *Superior Court, supra*, 53 Cal.3d 282.) The court noted that the U.S. Supreme Court "rejected the proposition that a law violates the ex post facto clause simply because it eliminates a 'substantial protection' existing at the time an offense was committed." Accordingly, "[a]fter *Collins*, we need not determine 'how substantial is the right that the statute impairs and how significant is that impairment.' [Citation.] Instead, we can resolve such challenges by applying the exclusive *Calder* categories." (*Id.*, at pp. 294-295.) Applying those categories, the court held that certain provisions of Proposition 115 which defined conduct as a crime, increased punishment for a crime, or eliminated a defense, could not be applied retroactively because "[a]pplication of these provisions to crimes committed before the measure's effective date would be 'retrospective' because each would change the legal consequences of the defendant's past conduct." (*Id.*, at p. 298.) Other provisions, relating to the conduct of trials, could be applied to pending cases, regardless of when the crime was committed. (*Id.*, at pp. 299-300; cf. *People* v. *Wharton, supra*, 53 Cal.3d 522, 586.)

The United States Supreme Court also reaffirmed the *Calder* categories in *Miller* v. *Florida* (1987) 482 U.S. 423 [96 L.Ed.2d 351, 107 S.Ct. 2446]. In that case, sentencing guidelines were increased between the date of the crime and the date of sentencing, and the court held that the application of the new guidelines to defendant was ex post facto because it was retrospective and it disadvantaged defendant. (*Id.*, at p. 430 [96 L.Ed.2d at p. 360].) The court said: "A law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" (*Ibid.*, quoting *Weaver* v. *Graham*,

---

[1] With regard to the increased punishment theory, *Collins* states: "Although increased punishments are not mentioned explicitly in the historical sources, the Court has never questioned their prohibition, apparently on the theory that '[t]he enhancement of a crime, or penalty, seems to come within the same mischief as the creation of a crime or penalty.'" (*Collins* v. *Youngblood, supra*, 497 U.S. 37, 44 [111 L.Ed.2d 30, 40].)

*supra*, 450 U.S. 24, 31 [67 L.Ed.2d 17, 24].) Since the change in sentencing guidelines retroactively increased the punishment for defendant's crime, it was retrospective for purposes of the ex post facto test.

In *In re Ramirez* (1985) 39 Cal.3d 931 [218 Cal.Rptr. 324, 705 P.2d 897], our Supreme Court also considered whether a change in a sentencing statute was retrospective under the *Weaver* test. The court stated that the issue was "whether a new statutory plan for awarding sentence reduction credits may be applied, without violation of the ex post facto clauses of the California or federal Constitutions, to prisoners who committed crimes before the effective date of the new scheme. We conclude that it may." (*Id.*, at p. 932.)

The court applied the test stated in *Weaver* v. *Graham, supra*, 450 U.S. 24, 29 [67 L.Ed.2d 17, 23], to determine whether the new law was retrospective. ■ We find the court's discussion determinative here: "For a law to be retrospective, 'it must apply to events occurring before its enactment.' [Citation.] A retrospective law violates the ex post facto clauses when it 'substantially alters the consequences attached to a crime already completed, and therefore changes "the quantum of punishment." ' [Citations.] [¶] We conclude that the 1982 amendments are not retrospective and therefore do not violate the ex post facto clauses. Petitioner, citing *Paez* [*In re Paez* (1983) 148 Cal.App.3d 919 (196 Cal.Rptr. 401)], contends that the 1982 amendments relate to the original offense, not to the infraction committed in prison. We disagree. *It is true that the 1982 amendments apply to petitioner only because he is a prisoner and that he is a prisoner only because of an act committed before the 1982 amendments. Nonetheless, the increased sanctions are imposed solely because of petitioner's prison misconduct occurring after the 1982 amendments became effective.* In other words, the 1982 amendments apply only to events occurring *after* their enactment. If any aspect of prison life is unconnected to a prisoner's original crime, it would seem to be the sanctions for his misconduct while in prison. Accordingly, the 1982 amendments, which change the sanctions for that misconduct, do not relate to petitioner's original crime and are not retrospective under *Weaver*." (*In re Ramirez, supra*, 39 Cal.3d 931, 936-937, first italics added.)

■ Paraphrasing the court's reasoning here, it is true that the new statute only applies to defendant because he has the status of a convicted felon, and he achieved that status before that statute became effective. Nevertheless, the new statute only applies to an event occurring after its effective date, i.e. defendant's possession of a shotgun six months after the statute became effective. The event, possession of a shotgun by a felon, occurred *after* the effective date of the statute, and the 1989 amendment was not retroactive.

The issue of whether a new law increases the punishment for a prior crime is not a new issue. The courts have generally held that a statute which increases the punishment of prior offenders is not an ex post facto law if it is applied to events occurring after its effective date. "Some ex post facto questions of the increased-punishment type have arisen in connection with the passage of habitual criminal laws, which impose enhanced penalties for later offenses if the defendant has previously been convicted of one or more crimes. If the defendant commits crime A at a time when there is no habitual criminal statute, then such a statute is passed imposing increased punishment for a second offense, and then the defendant commits crime B, it is not within the ex post facto prohibition to apply the habitual criminal statute to crime B. No additional punishment is prescribed for crime A, but only for the new crime B, which was committed after the statute was passed. Similarly, it is permissible to define a crime as limited to certain conduct engaged in by persons who have theretofore been convicted of some other offense and to apply the statute to one whose earlier offense and conviction predated the enactment of this statute." (1 LaFave & Scott, *op. cit. supra,* § 2.4, p. 139.)

Here defendant was convicted of conduct, his possession of a shotgun, occurring after the effective date of the statute. His conduct was a violation of the new statute, rather than an increase of punishment for the earlier offense of possessing marijuana for sale.[2] Although the statute only applied to him because of his status as a person convicted of a felony, and the felony conviction occurred before the statute became effective, the fact of his prior conviction only places him into a *status* which makes the new law applicable to him. The legal consequences of his past conduct were not changed—only a new law was applied to his future conduct.

The dissent concedes that this argument would have merit if the amendment to Penal Code section 12021, subdivision (a) had provided that *no*

---

[2]Appellant and the dissent argue that the disabilities resulting from the prior crime were increased by amendment of the statute, and thus the punishment was increased. They rely on *People v. Bell* (1989) 49 Cal.3d 502, 542-546 [262 Cal.Rptr. 1, 778 P.2d 129], in which our Supreme Court held that the prohibition imposed by Penal Code section 12021 at the time of conviction is a disability of a conviction which is not released by honorable discharge from the Youth Authority. There was no ex post facto issue in *Bell.* (See, also, *Bradford v. Cardoza* (1987) 195 Cal.App.3d 361, 365 [240 Cal.Rptr. 648]; *People v. Taylor* (1960) 178 Cal.App.2d 472, 480 [3 Cal.Rptr. 186].)

Even though the prohibition imposed by Penal Code section 12021 is a disability, this court's opinion in *People v. Mink* (1985) 173 Cal.App.3d 766 [219 Cal.Rptr. 291], makes it clear that "it is the second or subsequent offense which is punished, not the first; and . . . the increased punishment provided for subsequent offenders is not an additional disability attaching to the first *offense*, but an appropriate penalty for the *person* who, after conviction of one crime commits another." (*Id.*, at p. 771, quoting *People v. Johnson* (1979) 95 Cal.App.3d 352, 357-358 [157 Cal.Rptr. 150]. Italics in original. Internal quotation marks omitted.)

*one* could possess a firearm after January 1, 1990, but it would find the statute retroactive because it only applies to previously convicted felons.
 This argument is really an equal protection argument, and long-settled principles allow the Legislature to limit the application of laws to a uniform class of persons such as previously convicted felons. (*People* v. *Dubose* (1974) 42 Cal.App.3d 847 [117 Cal.Rptr. 235]; *People* v. *James* (1925) 71 Cal.App. 374, 378-379 [235 P. 81].) Since the law acts uniformly on all persons in the affected class, there is no equal protection issue here.

"In the search for more effective criminal sanctions, it is common for legislatures to prescribe heavier punishments upon offenders who have previously violated the law. Statutes embodying such provisions frequently have been attacked as ex post facto laws, but are generally sustained.
 A statute prescribing a heavier punishment for second offenders is not invalid as ex post facto, even though the first offense was previously committed; *the punishment is of the second offense only, but is more severe because of the class in which the defendant placed himself by his first offense.* A statute providing permanent incarceration for persons with multiple convictions, even though some of the offenses were committed previous to the enactment, is not an ex post facto law. As in the case of second offense statutes, punishment is for the new crime only, but is more severe because the defendant is an habitual criminal. A penalty may not be increased, however, because of prior convictions for a specific crime, when the new offense was committed prior to an amendment of the habitual criminal statute to include the old crime among the felonies enumerated." (Sutherland, Statutory Construction (4th ed. 1986) § 42.08, p. 461, italics added.)

The California cases follow these general principles. For example, in *People* v. *Jackson* (1985) 37 Cal.3d 826 [210 Cal.Rptr. 623, 694 P.2d 736], overruled on different grounds in *People* v. *Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150], a serious felony enhancement (Pen. Code, § 667) was based on a prior burglary conviction which occurred before the enhancement was enacted by Proposition 8. The court said: "The basic purpose of the section—the deterrence of recidivism—would be frustrated by a construction which did not take account of prior criminal conduct. No constitutional bar prevents the application of section 667 to the later offense solely because the prior conviction which serves as a basis for enhancement was committed before the initiative passed. In the context of habitual criminal statutes, 'increased penalties for subsequent offenses are attributable to the defendant's status as a repeat offender and arise as an incident of the subsequent offense rather than constituting a penalty for the prior offense.' [Citation.]" (37 Cal.3d at p. 833; see, also, *People* v. *Williams* (1983) 140 Cal.App.3d 445, 448 [183 Cal.Rptr. 497]; *People* v. *Dolliver*

(1986) 181 Cal.App.3d 49, 57 [225 Cal.Rptr. 920]; 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) § 1509, pp. 1794-1796.)

▮▮▮ In the precise context here, former Penal Code section 12021, subdivision (a) withstood an ex post facto attack in *People* v. *James, supra,* 71 Cal.App. 374. The court said: "A law is not objectionable as *ex post facto* which in providing for the punishment of future offenses authorizes the offender's conduct in the past to be taken into account and the punishment to be graduated accordingly. Heavier penalties are often provided by law for a second or any subsequent offense than for the first; and it has not been deemed objectionable that in providing for such heavier penalties the prior conviction authorized to be taken into account may have taken place before the law was passed. [Citations.] In such case it is the second or subsequent offense which is punished, not the first." (*Id.,* at p. 378.) ▮▮▮▮▮ The same is true here.[3] (*People* v. *Camperlingo* (1924) 69 Cal.App. 466, 471-472 [231 P. 601], citing *Ex parte Gutierrez* (1873) 45 Cal. 429; see, generally, 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) §§ 16-19, pp. 19-25; 2 Witkin & Epstein, *op. cit. supra,* § 1098, pp. 1267-1271.)

▮▮▮ Similarly, *People* v. *Venegas* (1970) 10 Cal.App.3d 814 [89 Cal.Rptr. 103], also rejected an ex post facto challenge to an earlier amendment to Penal Code section 12021. The court said: "A statute is not retroactive in operation merely because it draws upon facts antecedent to its enactment for its operation. [Citation.] It has been held that drawing upon a felony conviction even prior to the time there was any legislation prohibiting possession of a firearm concealable upon the person by one previously convicted of a felony [citation] or a felony conviction prior to its effective date [citation] does not render the new law a bill of attainder or an ex post facto law. The crime for which the defendant is punished in an instance such as we have here is not the earlier felony, but the new and separate crime of which the prior felony conviction is only a constituent element. Without the defendant's commission of new and additional acts after he has notice of the new legislation, the statute passed or amended after the constituent felony conviction would not come into play." (10 Cal.App.3d at p. 823.)

---

[3] "'Penal Code, section 12021, is part of the legislative scheme originally promulgated in 1917 . . . and commonly known as the Dangerous Weapons Control Act. . . . The clear intent of the Legislature in adopting the weapons control act was to limit as far as possible the use of instruments commonly associated with criminal activity [citation] and, specifically, "to minimize the danger to public safety arising from the free access to firearms that can be used for crimes of violence." [Citation.]' . . . The law presumes the danger is greater when the person possessing the concealable firearm has previously been convicted of felony, and the presumption is not impermissible. [Citation.] It is evident that 'the almost frivolous "burden" suffered by a convicted felon denied the "right" to carry a concealable weapon' [citation] pales in comparison with the true disability suffered [in other cases]." (*People* v. *Bell, supra,* 49 Cal.3d 502, 544.)

As this court said in *People* v. *Mink, supra,* 173 Cal.App.3d 766, 770, " 'The law is well established that . . . the increased penalty for a prior is attributable solely to the new, rather than the former, crime and its purpose is to discourage recidivist criminal conduct . . . .' "

As discussed in the next section, defendant knew, or should have known, that it was a crime for him to possess a shotgun after January 1, 1990. He had fair warning of the new law, and he did possess a shotgun after that date. (*In re Ramirez, supra,* 39 Cal.3d 931, 938.) His conviction for doing so was not retrospective. Although the new law applied to him because he had the status of a felony offender, he was not additionally punished for possessing marijuana for sale but rather was punished for committing a new crime, possession of a firearm by a felon, after the amendment to the statute became effective. (See, generally, 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, §§ 419-420, pp. 601-602.)

## Was the Probation Department Required to Give Defendant Personal Notice of the New Law?

Defendant also argues that he was deprived of equal protection of the law because he was not actually personally notified of the 1989 amendment to Penal Code section 12021, subdivision (a), while personal notice was given to persons on active probation. He also contends that he was deprived of due process because he was convicted without notice of the law, citing *Lambert* v. *California* (1957) 355 U.S. 225 [2 L.Ed.2d 228, 78 S.Ct. 240].[4]

As noted above, the 1989 amendment to Penal Code section 12021, subdivision (a) does not violate equal protection principles because it applies to convicted felons as a class. ■ Defendant advances another equal protection argument—that the Inyo County Probation Department, having embarked on a program to notify current probationers of the new law, was required by equal protection principles to notify all previous probationers as well.

We find no merit in this contention. Presumably, there were four classes of persons with prior convictions in the county—persons on active probation, persons who had completed their probation (whether or not probation was

---

[4]In *Lambert,* Justice Douglas held that a provision of the Los Angeles Municipal Code that required registration of people previously convicted of a felony was invalid under due process principles. The court held that defendant's conduct was merely passive, and that actual notice of the duty to register was necessary to the validity of a conviction. While this case supports defendant's position, we are obligated to follow the more specific precedents, discussed below, that find that actual knowledge of the statute, or actual knowledge of the convicted felon status, are not elements of the offense.

formally terminated under Pen. Code, § 1203.4), persons who had prior convictions but who had not been on probation in this country and parolees. The county probation department keeps records of persons under its supervision, and for five years thereafter. (Pen. Code, § 1203.10.) The department determines the level and type of supervision for persons under its control, taking into account the court orders and the objectives stated in Penal Code section 1202.7. (Pen. Code, § 1202.8.)

The probation department has no general duty to advise persons on probation of changes in the law that might affect their future conduct, but a probation officer testified here that the department had notified active probationers of the change in the law.[5]

We think that the decision to notify persons on active probation of the change in California law, and not the other classes mentioned above, was reasonably related to the goals of probation (Pen. Code, § 1202.7), and was within the probation department's discretion to determine the level and type of supervision to be given. (Pen. Code, § 1202.8.) The probation department's decision was not arbitrary, and we think that active probationers was a reasonable classification for equal protection purposes.[6] (*Boles* v. *Superior Court* (1974) 37 Cal.App.3d 479, 484-485 [112 Cal.Rptr. 286].) In any event, defendant has not shown, and cannot show, an intentional or purposeful discrimination. (*Snowden* v. *Hughes* (1944) 321 U.S. 1, 8 [88 L.Ed. 497, 503, 64 S.Ct. 397].)

■ We also disagree with defendant's contention that due process requires actual notice of the law he is charged with violating. Although we assume, for purposes of this discussion, that defendant had no actual knowledge of the amendment to Penal Code section 12021, subdivision (a), actual knowledge is not an element of the offense.[7] Thus in *People* v. *Snyder, supra,* 32 Cal.3d 590, our Supreme Court held that "lack of actual knowledge of the

[5]The officer also testified that the probation department was not aware of the federal Gun Control Act of 1986 (18 U.S.C.A. § 921 et seq.) while defendant was on probation, and it had accordingly not notified him of the restrictions under that law.

[6]The line has to be drawn somewhere, and the alternative of notifying active probationers and persons with closed files whose probation had terminated within five years (Pen. Code, § 1203.10), but not those who had older closed files, seems even more arbitrary. After all, the probation department is still attempting to influence the behavior of persons currently under active probation to achieve the goals of Penal Code section 1202.7.

[7]However, the court in *Snyder* said: "No specific criminal intent is required, and a general intent to commit the proscribed act is sufficient to sustain a conviction. [Citations.] With respect to the elements of possession or custody, it has been held that knowledge is an element of the offense. [Citations.]" (*People* v. *Snyder* (1982) 32 Cal.3d 590, 592 [186 Cal.Rptr. 485, 652 P.2d 42].) Knowledge of the presence of the weapon is therefore required. (CALJIC No. 12.43.)

provisions of Penal Code section 12021 is irrelevant; the crucial question is whether the defendant was aware that he was engaging in the conduct proscribed by that section. [Citations.] [¶] In the present case, defendant was presumed to know that it is unlawful for a convicted felon to possess a concealable firearm. . . . [¶] . . . Her asserted mistake regarding her correct legal status was a mistake of law, not fact. It does not constitute a defense to section 12021." (*Id.*, at p. 593.[8]) Under defendant's view of the law, " '[i]f a person accused of a crime could shield himself behind the defense that he was ignorant of the law which he violated, immunity from punishment would in most cases result.' " (*Id.*, at p. 593.) As the old saying goes, "Ignorance of the law is no excuse." (Pen. Code, § 26; CALJIC No. 4.36.)

### DISPOSITION

The judgment is affirmed.

McDaniel, J.,* concurred.

**TIMLIN, J.,** Concurring and Dissenting.—I concur in the majority's analysis and rejection of defendant's due process and equal protection of the law challenges to the application of Penal Code section 12021, subdivision (a) in this case.[1] However, I respectfully dissent from the majority's discussion and conclusion concerning the effect of the constitutional prohibition against ex post facto laws on the application of section 12021(a) in this case. I would reverse the judgment entered below because, in my view, the amendment to section 12021(a) which became effective on January 1, 1990—that is, the expanded scope of the section which now encompasses the possession of *non*concealable firearms by convicted felons—can be applied validly only to those who have suffered a prior felony conviction for an offense which was committed on or after January 1, 1990. As to those whose only prior felony convictions relate to criminal offenses committed prior to January 1, 1990, such as defendant herein, application of the 1990 amendment to section 12021(a) violates the constitutional proscription against ex post facto laws and is therefore void to the extent of such application.

---

[8]The court also points out that "[t]he federal statute has been uniformly interpreted as requiring only that the defendant was in fact a convicted felon, and not that he actually knew he was a felon." (*Id.*, at p. 594.)

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.

[1]Section 12021, subdivision (a) of the Penal Code will hereinafter be cited simply as section 12021(a).

## Facts

The majority has simply and fairly stated the facts underlying the within matter. I would add only the observation that our Supreme Court has recognized that the category of weapons encompassed by the phrase "firearms capable of being concealed upon the person" does not include "shotguns, rifles, or other large weapons." (*In re Rameriz* (1924) 193 Cal. 633, 646 [226 P. 914, 34 A.L.R. 51].) Thus, when defendant committed the felony marijuana possession offense in 1980, section 12021(a), as then worded, did not operate so as to render possession of a shotgun by defendant a criminal act. It was not until some eight and one-half years following defendant's conviction of the felony marijuana possession charge that the 1990 amendment to section 12021(a) made the possession of a shotgun by a convicted felon (such as defendant) a criminal act.

My analysis of the ex post facto challenge raised by defendant is set forth below.

## The Constitutional Prohibition Against the Passage of Ex Post Facto Laws as Applied in This Case

Under both the federal and the state Constitutions, the passage of ex post facto laws is prohibited.[2] As our own Supreme Court noted just this past year, the United States Supreme Court itself has had recent occasion to address the precise formulation of the constitutional proscription against ex post facto laws: "Under that exclusive formulation, ' "any statute [1] which punishes as a crime an act previously committed, which was innocent when done; [2] *which makes more burdensome the punishment for a crime, after its commission*, or [3] which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*." ' (*Collins* [v. *Youngblood* (1990) 497 U.S. 37, 42 (111 L.Ed.2d 30, 39, 110 S.Ct. 2715)], quoting *Beazell* [v. *Ohio* (1925)] 269 U.S. [167, 169-170 (70 L.Ed. 216, 217, 46 S.Ct. 68)].)" (*Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 294 [279 Cal.Rptr. 592, 807 P.2d 434], first italics added and fn. deleted.)[3] It is the second of these prohibitory categories which is of concern here; as formulated by our Supreme Court: "[T]hose [statutory provisions] which change the legal consequences of criminal

[2]The federal prohibition against ex post facto laws is found in article I, section 10, clause 1 of the United States Constitution. The state prohibition is found in article I, section 9 of the California Constitution.

[3]Defendant has based his "ex post facto argument" on both the federal and the state Constitutions. However, for all practical purposes, the two Constitutions treat the issue in precisely the same manner and there is but one "ex post facto argument" to be made. (*Tapia, supra,* 53 Cal.3d at pp. 295-297.)

behavior to the detriment of defendants[ ] cannot be applied to crimes committed before the measure's effective date." (*Tapia, supra,* at p. 297.)[4]

The issue in this case, then, is whether the 1990 amendment of section 12021(a) which prohibits defendant's possession of a shotgun impermissibly has made more burdensome his disability as a felon or "more burdensome the punishment" for defendant's 1980 felony marijuana possession offense (or, alternatively, impermissibly effected a retrospective detrimental change in the legal consequences of defendant's conviction for his 1980 felonious criminal behavior). This focused formulation of the issue can, in turn, be focused somewhat further:

It seems beyond argument that the 1990 amendment to section 12021(a) imposed an additional "burden" on defendant—after the statute was amended, defendant as a felon could no longer do certain things (under penalty of criminal sanction) that as a felon he could do before the statute was amended.[5] So, the critical "core" of the issue before us is the question of whether the additional burden placed on defendant by the 1990 amendment to section 12021(a) prohibiting as criminal previously lawful conduct by a felon constitutes an invalid increase in the penalty or invalid burden on his disability as a felon which defendant was made to suffer as a consequence of his 1980 felony marijuana possession offense or, instead, constitutes nothing more than a valid legislative "regulation" of conduct by convicted felons. In answering this question, I am guided by the United States Supreme Court's admonitions that: (1) "Subtle *ex post facto* violations are no more permissible than overt ones" (*Collins* v. *Youngblood, supra,* 497 U.S. at p. 46 [111 L.Ed.2d at p. 41]); and (2) "[I]t is the *effect,* not the form, of the law that determines whether it is ex post facto." (*Weaver* v. *Graham* (1981) 450 U.S. 24, 31 [67 L.Ed.2d 17, 24, 101 S.Ct. 960], italics added.)

The majority quotes in part from *In re Ramirez* (1985) 39 Cal.3d 931, 936 [705 P.2d 897], as follows: "A retrospective law violates the ex post facto clauses when it 'substantially alters the consequences attached to a crime already completed, and therefore, changes the "quantum of punishment." '

---

[4] I do not understand, as the majority suggests, that defendant is also relying on the second definition of an ex post facto law set forth in *Calder* v. *Bull* (1798) 3 U.S. (3 Dall.) 386, 390-392 [1 L.Ed. 648, 650], thereby contending that section 12021(a), as amended in 1990, aggravated his felony crime of possession of marijuana for sale in 1981.

[5] I acknowledge that the mere fact that a statute creates an additional "burden," alone, does not necessarily mean that the statute runs afoul of the ex post facto prohibition. As the People aptly point out, "[A] state may properly impose penalties for continuing once lawful conduct which has subsequently been declared illegal without triggering the prohibition against ex post facto laws." (See *Samuels* v. *McCurdy* (1925) 267 U.S. 188, 193 [69 L.Ed. 568, 570, 45 S.Ct. 264, 37 A.L.R. 1378], and *People* v. *McCloskey* (1926) 76 Cal.App. 227, 229-230 [244 P. 930].)

[Citations.]" This is the legal principle which shapes the core issue but the majority, after giving recognition to it, ignores it and concludes that "the new statute [in its application to defendant] only applies to an event occurring after its enactment, i.e., defendant's possession of a shotgun six months after the statute passed." (Maj. opn., *ante*, p. 1285.)

As discussed in greater detail later, the basic flaw in the majority's analysis is that it fails to consider the new amendment's prohibited ex post facto *effect* of increasing the disability and burden imposed for defendant's 10-year-old felonious act of possessing marijuana for sale—*irrespective* of whether or not defendant did possess a firearm after January 1, 1990. The majority, in its analysis, "begs" the core issue, assumes section 12021(a) does not violate the ex post facto constitutional prohibition and then blithely proceeds with a discussion of the constitutional validity of penal enhancements based on "priors" with respect to the sentence to be imposed for a present conviction.

Section 12021(a)'s prohibition against the possession of firearms by convicted felons has been explicitly recognized as one of the "punishments and disabilities which normally are a consequence of the commission of an offense . . . because it imposes criminal sanctions upon a convicted felon as an incident of his or her conviction. [Citations.]" (*Bradford* v. *Cardoza* (1987) 195 Cal.App.3d 361, 365 [240 Cal.Rptr. 648].)[6] Indeed, as this court itself has stated: "The time has come to recognize with [] candor that 'imprisonment' represents only the first phase of society's retribution against the convicted criminal. 'Punishment' in a variety of forms besets the parolee, the probationer and the ex-felon long after the completion of his prison term. As one writer has observed: 'Ours is a penalty system of justice. Ex-prisoners continue to suffer from statutory and extra-legal penalties long after their release from prison.' [Citation.] [¶] Upon his release from prison, the ex-felon cannot simply resume the life he led before prison as if nothing had happened. Besides the well-known informal discriminations, he or she

---

[6]Other cases share *Bradford*'s recognition of section 12021 as one of the consequential "punishments and disabilities" attending a felony conviction:

(1) In *People* v. *Taylor* (1960) 178 Cal.App.2d 472 [3 Cal.Rptr. 186], at page 480, the Court stated that "section 12021 is one of the 'penalties and disabilities' imposed upon a convicted felon." (In *People* v. *Bell* (1989) 49 Cal.3d 502, at pages 545-546 [262 Cal.Rptr. 1, 778 P.2d 129], our Supreme Court questioned *Taylor*'s reasoning in concluding that section 12021's prohibition against firearms possession by convicted felons was one of the "penalties and disabilities" encompassed by the dismissal/release provisions of Penal Code section 1203.4, but it did not question *Taylor*'s general conclusion that section 12021's prohibition "is one of the 'penalties and disabilities' imposed upon a convicted felon.")

(2) In *Ready* v. *Grady* (1966) 243 Cal.App.2d 113 [52 Cal.Rptr. 303], at page 116, footnote 1, the court identified section 12021 as one of "[t]he many well known criminal penalties and disabilities."

confronts a battery of statutory disabilities. . . . In addition, the ex-felon may not . . . possess a concealable weapon . . . ." (*Sovereign* v. *People* (1983) 144 Cal.App.3d 143, 148 [192 Cal.Rptr. 469].)

Thus, the 1990 expansion in the prohibitory scope of section 12021(a) *does* represent an increase in the punishment and expansion of the disability to be suffered as a consequence of a felony conviction—and, absent some countervailing legal principle of equal constitutional dignity, the retrospective application of that increase in punishment to those convicted felons, who, prior to January 1, 1990, committed felonious acts (of which they were later convicted) either prior to or after January 1, 1990, *would* run afoul of the constitutional proscription against ex post facto laws.

The People have argued that there are two such countervailing legal principles, but these arguments lack merit:

First, the People and the majority focus on the fact that the actual firearms possession for which defendant was convicted occurred *after* January 1, 1990, the effective date of the amendment to section 12021(a), and then go on to argue on the basis of that fact that section 12021(a) was not applied retrospectively in this case as an ex post facto law. This argument itself has two fundamental shortcomings:

(a) The argument might have merit if the amendment to section 12021(a) had provided that *no one* could possess a firearm after January 1, 1990; such an amendment then would have been a general legislative act prohibiting certain *future* conduct by all persons without regard to a person's criminal status, and would not have had the effect of simply increasing the criminal penalty and disability of felons who had committed a felony prior to the amendment and been convicted of such. Given the limited application of section 12021(a), however, the only functional effect of the 1990 amendment to that section, insofar as felons whose only convictions are for felonies committed before January 1, 1990 are concerned, is to increase the criminal sanction/disability which attached as a consequence of the prior convictions —and, as noted earlier: "[I]t is the *effect*, not the form, of the law that determines whether it is ex post facto." (*Weaver* v. *Graham, supra,* 450 U.S. at p. 31 [67 L.Ed.2d at p. 24], italics added.)

The majority brushes aside this portion of my analysis by creating a "strawman" and then knocking it down. The majority states that this portion of my analysis "is really an equal protection argument"—and then goes on to show why the 1990 amendment to section 12021(a) does not violate the constitutional guarantee of "the equal protection of the laws." What the

majority seems to have overlooked is the fact that a law which meets equal protection muster both facially and *as applied*, still must not violate the constitutional proscription against ex post facto laws—the two constitutional principles are neither coterminous nor mutually exclusive.

(b) The other flaw in the People's first argument lies in the fact that they have misconstrued and misunderstood what it is that constitutes the punishment and increased burden occasioned by the 1990 amendment to section 12021(a), as applied to convicted felons who committed felonies prior to January 1, 1990. It is not the subsequent *conviction* based on a defendant's after-the-fact (more accurately, "after-the-amendment") *possession* of a firearm which is the ex post facto burden imposed by the 1990 amendment to section 12021(a); rather, the ex post facto burden imposed by the 1990 amendment to section 12021(a) is the *prohibition* (under sanction of criminal conviction) against possessing any "long arm." This burden existed as soon as the amendment went into effect—and operated so as to impose an increased disability on convicted felons such as defendant *whether or not* they possessed any such arm and whether or not they ever were convicted of the same. (See *Sovereign v. People, supra,* 144 Cal.App.3d 143, for a review and discussion of an analogous issue.)

One of the fundamental deficiencies in the majority's position is the fact that it has made precisely the same mistake as the People in viewing the subsequent conviction of defendant for possessing the shotgun as being "the" burden, punishment or disability implicated on ex post facto grounds in this case.

Second, the People argue that the 1990 amendment to section 12021(a) is valid because it (a) represents a legitimate exercise of the legislative police power with respect to the control of dangerous weapons in the interest of public safety and (b) only draws a distinction between those who are felons and those who are not, a permissible distinction in the context of firearms control legislation.[7] This argument also lacks merit. The fact that a statute is *otherwise* valid does not justify or legitimize a violation of the constitutional

---

[7]In support of this argument, the People quote from our Supreme Court's opinion in *People v. Bell, supra,* 49 Cal.3d at page 544:

" 'Penal Code, section 12021, is part of the legislative scheme originally promulgated in 1917 (Stats. 1917, ch. 145, p. 221, § 1) and commonly known as the Dangerous Weapons Control Act. . . . The clear intent of the Legislature in adopting the weapons control act was to limit as far as possible the use of instruments commonly associated with criminal activity [citation] and, specifically, "to minimize the danger to public safety arising from the free access to firearms that can be used for crimes of violence." (*People v. Scott,* 24 Cal.2d 774, 782 [151 P.2d 517].)' (*People v. Washington* (1965) 237 Cal.App.2d 59, 66 [46 Cal.Rptr. 545].) The law presumes the danger is greater when the person possessing the concealable

proscription against ex post facto laws by that statute. (In a similar vein, see my brief discussion concerning the majority's characterization of another portion of my analysis as being "really an equal protection argument," *ante.*) Assuming, for precisely the reasons stated by the People in this second argument, that the 1990 amendment to section 12021(a) is a valid law as applied to persons who are convicted of felonies committed on or after January 1, 1990, the retrospective application of that amendment to felons convicted of felonies committed before January 1, 1990, such as defendant, is *not* valid. Once again, I emphasize that we are to look to the *effect* of the law—not its form.

### Apparent Contrary Authority

My research has revealed two published opinions which suggest, at first glance, a result which is contrary to the position I have taken on this issue. Upon closer examination, however, neither case stands as persuasive contrary authority:

(1) In *People* v. *Camperlingo* (1924) 69 Cal.App. 466 [231 P. 601], the Court of Appeal upheld, in the face of a challenge based on the constitutional prohibition against ex post facto laws, a "felon in possession" conviction notwithstanding the fact that the felony of which defendant had been convicted was committed prior to the passage of the act which created the crime of "felon in possession." The court's analysis of the ex post facto issue (*id.* at pp. 470-473), however, is faulty in at least two different regards:

(a) *Camperlingo* relied heavily on the opinion rendered in *People* v. *Smith* (1918) 36 Cal.App. 88 [171 P. 696]. In *Camperlingo*'s words: "Regarding the point that . . . the statute in question seeks to . . . punish [the defendant] for an offense which was committed prior to the enactment of the statute here under consideration—it may be said that legislation of a similar character has heretofore received judicial approval in the case of *People* v. *Smith*, . . ." (69 Cal.App. at p. 471.) *Camperlingo*'s reliance on *Smith* was misplaced. In *Smith*, the court merely concluded that the constitutional proscription against the passage of ex post facto laws was not violated by a criminal statute which *enhanced*, on the basis of the defendant's prior criminal conduct, the penalty to be suffered for a violation of that statute. I agree with *Smith* in that regard—a penalty enhancement does not constitute a retrospective additional punishment for a prior conviction based on felonious conduct occurring prior to the statutory creation of the enhancement, but, rather, merely constitutes an increase in a defendant's punishment for the subsequent conviction in accord with his or her recidivistic tendencies.

firearm has previously been convicted of felony, and the presumption is not impermissible. (*People* v. *Dubose* (1974) 42 Cal.App.3d 847, 849-850 [117 Cal.Rptr. 235].)"

(See *People* v. *Shields* (1991) 228 Cal.App.3d 1239, 1243 [279 Cal.Rptr. 403].) This has nothing to say, however, about the ex post facto effects of a statutory enactment such as the 1990 amendment to section 12021(a).

The majority falls prey to the same shortcoming in analysis as occurred in *Camperlingo*. Virtually all of the authority upon which the majority places its primary reliance are cases dealing with penalty enhancements imposed in connection with the commission of a subsequent crime, not cases dealing with the increase of disabilities, burdens or penalties previously imposed on or resulting from criminal acts for which defendant was previously convicted:

(i) In *People* v. *James* (1925) 71 Cal.App. 374 [235 P. 81] (a case in which an ex post facto analysis properly could have been applied to the "felon in possession" facts, but was not), the court stated: "A law is not objectionable as *ex post facto* which in providing for the punishment of future offenses authorizes the offender's conduct in the past to be taken into account and the punishment to be graduated accordingly." (*Id.* at p. 378.)

(ii) In *People* v. *Mink* (1985) 173 Cal.App.3d 766 [219 Cal.Rptr. 291] (a case having to do with the imposition of a five-year sentence enhancement), the court stated: " 'The law is well established that . . . the increased penalty for a prior is attributable solely to the new, rather than the former, crime and its purpose is to discourage recidivist criminal conduct [citations].' " (*Id.* at pp. 770-771, quoting from *People* v. *Johnson* (1979) 95 Cal.App.3d 352, 357 [157 Cal.Rptr. 150].)

(iii) In *In re Ramirez, supra,* 39 Cal.3d 931 (a case concerning a challenged statutory scheme for governing the award of sentence reduction credits to prisoners), the Supreme Court stated: "It is true that the 1982 amendments apply to petitioner only because he is a prisoner and that he is a prisoner only because of an act committed before the 1982 amendments. Nonetheless, the increased sanctions are imposed *solely* because of petitioner's prison misconduct occurring after the 1982 amendments became effective. In other words, the 1982 amendments apply only to events occurring *after* their enactment. If any aspect of prison life is unconnected to a prisoner's original crime, it would seem to be the sanctions for his misconduct while in prison. Accordingly, the 1982 amendments, which change the sanctions for that misconduct, do not relate to petitioner's original crime and are not retrospective under *Weaver*." (*Id.* at pp. 936-937, first italics added.) As in the other "enhancement cases," this case concerned a situation in which the enhanced penalties were imposed with regard to subsequent conduct which was separately and independently actionable without reference to the prior conduct/conviction: "First, a prisoner may lose accumulated

good behavior credits for 'any act . . . which . . . could be prosecuted . . . as a misdemeanor or a felony, or any act of misconduct described as a serious disciplinary infraction by the Department of Corrections.' (§ 2931.)" (39 Cal.3d at p. 933.)

(iv) Finally, in *People* v. *Venegas* (1970) 10 Cal.App.3d 814 [89 Cal.Rptr. 103] (a case concerning the applicability of an increase in the maximum sentence for a "felon in possession" conviction, where the increase had been legislatively adopted after the prior felony had been committed), the court stated: "Section 12021, as amended in 1965, was on the books for years prior to defendant's violation of section 12021 on March 12, 1969, and for which he was convicted. A statute is not retroactive in operation merely because it draws upon facts antecedent to its enactment for its operation. [Citation.]" (*Id.* at p. 823.) *Venegas* is somewhat different in principle than the above cases; however, it dealt only with the applicability of an increase in a penalty for the commission of a subsequent crime, the commission of which crime was a given.

(b) Further, *Camperlingo* makes the same mistake as the People in this case and assumes that an ex post facto challenge to a law can be met by pointing out that the Legislature has the police power to address the subject matter of the law and that the distinction drawn by the Legislature between classes of people under the law is a permissible one. I am unpersuaded by *Camperlingo* in this regard, just as I am unpersuaded by the People. (See discussion, *ante.*)

(2) In *People* v. *McCloskey, supra,* 76 Cal.App. 227, the Court of Appeal also upheld a conviction on a "felon in possession" charge in the face of a challenge based on the constitutional prohibition against ex post facto laws. *McCloskey,* however, is of even less moment than *Camperlingo* insofar as the ex post facto issue here involved is concerned:

(a) There is nothing in the *McCloskey* opinion to indicate that the criminal act for which the prior felony conviction had been imposed occurred prior to the passage of the "felon in possession" law. Consequently, it is uncertain whether *McCloskey* is actually concerned with an ex post facto law.

(b) In *McCloskey,* the defendant's ex post facto argument was limited to the contention that the Legislature can never make illegal the possession of something which had originally been possessed legally. This is clearly an argument without merit and the Court of Appeal's rejection of the same bears no significance for this case.

### FALLACIES IN THE MAJORITY'S ANALYSIS

The above analysis reveals two basic fallacies in the majority's position on the ex post facto issue raised in this case. I have already discussed both of

these fallacies—and I repeat them here only to highlight and clarify the basis of my disagreement with the majority:

First, the majority has failed to recognize that the burden, punishment or disability which is implicated on ex post facto grounds in this case is the prohibition (under sanction of criminal conviction) against the possession of "long arms"—not the conviction actually suffered by defendant for possessing a shotgun.

Second, the majority has failed to properly distinguish between, on the one hand, cases that concern the interplay between the constitutional proscription against ex post facto laws and the validity of penalty enhancement provisions respecting subsequent convictions (constitutionally valid) and, on the other hand, cases that concern the interplay between the constitutional proscription against ex post facto laws and the validity of their provisions which have the effect of increasing the penalty respecting prior criminal conduct for which a defendant was previously convicted (constitutionally invalid).

CONCLUSION

The 1990 amendment to section 12021(a)—that is, the expanded scope of the section which now encompasses the possession of *nonconcealable* firearms by felons—can be validly applied only to those who have suffered a felony conviction for an offense which was committed on or after January 1, 1990. As to those whose only prior felony convictions relate to criminal offenses committed prior to January 1, 1990, such as in the case before us on appeal, application of the 1990 amendment to section 12021(a) violates the constitutional proscription against ex post facto laws and is therefore void. Regarding the latter category of felons, such felons may, of course, be charged with and convicted of violating section 12021(a) for possessing *concealable* firearms.[8]

In my view, defendant's conviction of violating section 12021(a), as amended in 1990, cannot stand, and I would reverse the same.

Appellant's petition for review by the Supreme Court was denied August 13, 1992.

---

[8]The 1990 amendment to section 12021(a) did not repeal and reenact the proscription against felons possessing firearms capable of being concealed upon the person. It merely broadened the prohibition to possession of *all* firearms, concealable or nonconcealable, by a felon. The prohibition against possession of concealable firearms has applied and continues to apply to all felons who possessed such a firearm before and/or after January 1, 1990. (Gov. Code, § 9605.)